# Vollrath v. Vollrath

*Laura E. Cooper,* for plaintiff.
*Lisa D. Gentile,* for defendant.

LASH, *J.,* November 1, 2006—This court held a custody trial on October 11, 16 and 25, 2006. At issue is primary custody of the parties' minor child, Lauren Vollrath, born June 7, 1999. The court makes the following findings of fact:

## I. FINDINGS OF FACT

(1) Plaintiff, Paul D. Vollrath (Father), is an adult individual who currently resides at 982 Garfield Court, Warrington, Bucks County, Pennsylvania 18976.

(2) Defendant, Tracy M. Vollrath (Mother), is an adult individual who currently resides at 52 Wood Circle, Reading, Berks County, Pennsylvania 19607.

(3) Father and Mother are the natural parents of a minor child, Lauren Vollrath (Minor Child), born June 7, 1999.

(4) The parties were formerly married but are now divorced.

(5) The parties separated on December 19, 2004, when Mother moved from the marital residence. Since the date of separation, Mother has had primary custody of the Minor Child, with Father having partial custody on alternating weekends and one weeknight every week.

(6) The parties and the Minor Child resided in Willow Grove, Montgomery County, Pennsylvania, from the Minor Child's birth until 2002. Later in 2002, the parties and the Minor Child moved to 8 Osprey Lane, Birdsboro, Berks County, Pennsylvania.

(7) When the parties separated, Mother moved to her present residence. Father remained in Birdsboro for a short time, then moved to his current residence in Bucks County.

(8) Father resides in the Central Bucks School District.

(9) Mother resides in the Governor Mifflin School District.

(10) The Minor Child attends daycare three days per week at the Flying Hills Preschool, located in the same residential complex where Mother resides. She attends approximately six hours per week during the school year and 30 hours per week during the summer.

(11) The Minor Child is deaf in one ear. The Governor Mifflin School District has taken the necessary steps to accommodate the Minor Child's special needs.

(12) Father is currently employed as the IT Director for Chapman Management, located at 1170 Easton Road, Horsham, Pennsylvania, where he has been employed for the last 12 years. He works full-time with flexible hours.

(13) Mother is currently employed by the Hartford Fire Insurance Company at 600 Office Center Drive in Fort Washington, Bucks County, Pennsylvania 19034, having been employed there for the last nine and one-half years. Her work hours are Monday through Friday from approximately 8 a.m. to 4:30 p.m., but her hours are

flexible. She is permitted to work at home on Wednesdays and Fridays.

(14) Mother's work commute is approximately one hour, one way.

(15) Father is remarried. His wife is Pamela Vollrath. She has three children from her previous marriage, John Tucker, born February 24, 1990, David Tucker, born February 11, 1991, and Nancy Tucker, born February 13, 1995. Her former husband and she share custody of their children.

(16) The Minor Child attends counseling with Lauren Fritz at Spring Psychological Associates in Sinking Spring, Berks County, Pennsylvania.

(17) Father's home is a single-family home located on a cul-de-sac. The home is approximately 2,900 square feet, set on a half acre lot. It features four bedrooms, two bathrooms, a family room and a game room, among other things. Father's home is suitable for rearing the Minor Child.

(18) Mother's home is a three bedroom, two and one-half bath townhouse. There is a playroom for the Minor Child. The townhouse is in a residential community which features several playgrounds, a duck pond, fields, tennis courts, a basketball court and a swimming pool. Mother's home is suitable for rearing the Minor Child.

## II. DISCUSSION

In determining primary custody, this court considered the testimony of the parties, Father's current wife, Pam, Mother's paramour, Charles Tancini, called as of cross-examination, Mariann McNally, the controller at Father's employment, Father's current mother-in-law, Irene Spar-

ango, the Minor Child's counselor, Lauren Fritz, and various other friends and family members of both parties. This court also conducted an informal interview with the Minor Child. Also considered were the exhibits admitted into evidence and the questionnaires submitted by the parties, which were filed of record.

Father believes it would be best for the Minor Child if the parties' current arrangement were changed and he would assume primary custody. For one, he argues that he would be more available for the Minor Child. Because he has flexible hours and because he lives close by the school where the Minor Child would attend if he had custody, the Minor Child would not be required to spend time in the daycare. He contrasts his availability to that of Mother who, because of her long commute, is substantially less able to provide quality time for the Minor Child. Additionally, because of Mother's job location, the Minor Child is isolated during the day. Father is concerned that if an emergency or other substantial issue arose, Mother's response time would be wholly inadequate.

Father states that he is ready and able to provide all the necessary caretaking and daily maintenance for the Minor Child. He cites his training with foster care agencies because his parents were foster parents and there were foster children living in his home while he was growing up. His training included safety and CPR. He also testified that it was he who worked with the Minor Child to help her learn to tie her shoes, to ride a bicycle with training wheels and to swim. He takes time with her educationally, such as helping her to learn about dinosaurs. He also likes to have fun and enjoys games and other forms of recreation with the Minor Child.

Father believes that the Minor Child would also benefit by the presence of her stepbrothers and, in particular, her stepsister, Nancy, with whom she has a good relationship. Further, there are many children in the neighborhood who are always out playing and enjoy the Minor Child's company. Additionally, Father has family members who live near his residence, contrasting this with Mother, who has no relatives living near her.

Father testified of his love for his daughter, stating: "It kills me to see her only four days a month." He would like to increase the time, and would make himself available for that purpose, but claims that Mother refuses to work with him. On his scheduled Wednesday evenings, he has not been able to see the Minor Child because Mother has scheduled activities for the Minor Child after school, including cheerleading and dancing. She refuses to modify the schedule to work with him. She refuses to share in the transportation. She limits telephone conversations with the Minor Child. All of these things have denied him the time he wants to have with his daughter.

He stated that he and Mother have difficulty communicating. At first, the communication was reasonable, but has deteriorated. At this point, the parties communicate via e-mail. Mother fails to communicate with Father about school, medical or other day-to-day issues. He cites one occasion when the Minor Child was accidentally burned by a cigarette while at a swimming pool while the Minor Child was being cared for by the daycare. He did not become aware of this until five hours after it happened. Father recommended that Mother fill out a form and e-mail it to him on a daily basis so that he can keep up with the Minor Child's daily activities. He states

Mother refuses to do this. Father believes that co-parenting counseling would be appropriate and states he would agree to participate.

Father has concerns about Mother's paramour, Charles Tancini. For one, Mother would not provide any information on him. Father had only his nickname Chuck, but had no last name, nor an address. Later, the Minor Child complained about Mr. Tancini and some of his actions, which she wanted to stop. He had a tendency to tickle her, primarily around the knees, but also in her stomach area, which he called her rock. Additionally, on at least one occasion, he was licking her face, and also when he and the Minor Child were together in a swimming pool, he was spitting the pool water in her direction.

Father believes that Mother should have chosen a residence closer to her employment, which would also be close to where he resides. This would permit easy and frequent access of both parents to the Minor Child. The reason she gave him for moving to her current residence was that she could not afford to live in his area. He disputes this, claiming that there are several attractive areas for her to reside at reasonable cost.

Father also believes that Mother does not properly attend to the Minor Child. He states that based on his conversations with the Minor Child, he believes that sometimes she goes several days without a bath. He wants the Minor Child to have a bath everyday.

Father finds Mother to be controlling and unilateral in decisions regarding the Minor Child. She refuses to meet with him to discuss the Minor Child. She hangs up on him when he tries to speak with her over the phone. She originally did not include his name as a contact person

on the daycare data sheet. She refuses to cooperate with Father even on matters of importance, such as Father's wedding to his current wife, which happened to fall on Mother's weekend. She would not work with Father on scheduled visits, on changing times for visits to accommodate schedules. When Mother needed someone to watch the Minor Child, she would seek out her friends, and never Father.

Mother presented that primary custody should remain with her, because the Minor Child is thriving under her care. From the time of separation, Mother has been the primary custodian. She has seen to all the Minor Child's day-to-day needs. She has been active with the Minor Child educationally and recreationally. She has encouraged the Minor Child to engage in activities such as dance class.

When Mother is unavailable, the daycare provides appropriate caretaking responsibilities. The daycare is located in close proximity to Mother's residence. The school bus can pick up and drop off the Minor Child at the daycare. In the event of an emergency, Mother has friends available until Mother arrives from work.

Mother opposes awarding Father additional time, believing Father is insincere in his representations. While he asks for additional time, he does not take advantage of the time scheduled for him, namely Wednesday evenings. Mother believes Father works much more than he relates, meaning that if the Minor Child were living at his house, the Minor Child would be cared for by her stepmother.

Father has never been as invested as Mother in the care of the Minor Child, previously agreeing that Moth-

er should be the primary custodian, and reiterating to her and friends on several occasions that this is what was best. Further, Mother believes that Father's true motive in seeking primary custody is to reduce his support obligation.

Mother does not believe the Minor Child would be as well cared for if she resided at Father's house. Father frequently drinks alcohol, particularly on weekends. His house is known as the party house. It was common when the parties resided together to have drinking parties arranged by Father. This has continued on after the parties' separation. When the Minor Child was born, Father proposed that her first drink at age 21 would be with him.

Mother also questions how well the Minor Child gets along with stepmother and her children. She believes that the stepmother is not warm to the Minor Child. The Minor Child's relationship with stepmother's daughter, Nancy, is on again, off again.

Mother also urges that Father acted improperly by coaching the Minor Child to strengthen his position in the custody case. According to Father, the Minor Child has stated on many occasions that she wants to live with him. According to Mother, the Minor Child has complained to Mother and to her counselor about these discussions with Father, which make her uncomfortable.

The paramount concern in a child custody proceeding is the best interests of the Minor Child. *Costello v. Costello,* 446 Pa. Super. 371, 375, 666 A.2d 1096, 1098 (1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be

premised upon consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton,* 442 Pa. Super. 381, 385, 659 A.2d 1040, 1042 (1995).

Both of these parties warrant mixed reviews. Father presents with an energy and strong desire to spend as much time with the Minor Child as possible. His presentation comes across as an appreciable need to have a strong and frequent parent-child relationship. While he has not used his Wednesday visits as often as possible, he points out that Mother has made it difficult for him to do so, by scheduling activities, and by refusing to participate in any transportation. With his work commitments, it becomes a hardship to pick up and drop off the Minor Child on the same evening, which would entail two two-hour round trips for him.

Father's household contains a family atmosphere. His wife's children are often present. There are children in the neighborhood, who play with each other in the neighborhood cul-de-sac where Father resides.

Father is perplexed why Mother will not make any effort to work with him to facilitate frequent interaction with him and the Minor Child. He is willing to do whatever it takes to ensure that the Minor Child has a good relationship with both parents.

On the other hand, Father conceded custody to Mother at a volatile time in the parties' lives, believing that Mother was better able, at least at that time, to care for the Minor Child. He has blown hot and cold, sometimes strongly moving forward into the Minor Child's life, while at other times being willing to take a subordinate role to Mother.

The party atmosphere at his home is not conducive to rearing a Minor Child. If Father insists on continuing with social drinking, he will have to install adequate safeguards so that the Minor Child is not exposed to intoxicated adults, driving under the influence or any byproducts of the use of alcohol. That being said, this court also recognizes that Father's activities occur on weekends, and neither Father nor Mother are seeking any change in the weekend schedule. As such, this issue does not impact on the issue of primary custody to the same extent as some of the other matters raised by the parties.

Father's involving the Minor Child in the custody proceeding was wholly inappropriate. This Minor Child is a shy, reserved, 7-year-old, already involved in counseling. The last thing she needs is to be put in a position where she is choosing between parents or where she wants to live. Most children, when asked, will tell the parent asking that the child wants to live with that parent. Whether true or not, the response is geared to pleasing that parent and avoiding the pain of telling a parent that the child would rather live with the other parent.

This court also has serious concerns about Mother. We first acknowledge that Mother did step to the plate and assume all the caretaking responsibilities, at a time that was difficult for her. Living alone as a single mother, in an area where she had no relatives and probably few friends, she nevertheless adapted and provided a suitable home for the Minor Child. She established continuity. She has never reduced her level of commitment.

Father has criticized Mother for refusing to move closer to her employment, which would also mean the

Minor Child would be living closer to him. From a current perspective, it, of course, would make it easier if Mother would reside closer to Father and her employment. Nevertheless, this court does not fault Mother for her choice of residence, because when she chose the residence, it was in close proximity to the marital residence in Birdsboro, where Father still resided. It was Father's move which created the distance between the parties.

Unfortunately, Mother has done her part to make custody transitions as difficult as possible. After assuming primary custodial duties, Mother, at some point, decided to take full control of the reins, shutting Father out whenever she could. She is uncooperative with Father. She refuses to speak with him or include him in, on important decisions. She originally failed to provide his name as a contact person to the daycare. She has refused to recognize that Father does have a say in legal custody proceedings. She has refused to assist in transportation, pointing out that it was Father who moved away and created the distance between the parties. The difficulties Father encountered when seeking to have the Minor Child attend his wedding came simply from Mother's pettiness.

There is also the issue of the Minor Child's physical contact with Mother's paramour, Chuck. While this court believes that Mother is the type of parent who would never compromise her Minor Child's safety, or permit her to be placed in a position of vulnerability, nevertheless, she did not exercise good judgment in allowing these activities, particularly Chuck's licking the Minor Child's face. The fact that Chuck's actions may be harmless and innocent aren't the point. What is the point is

that Mother is dealing with a 7-year-old child and an adult male, a non-relative. It is significant that the Minor Child complained to Father's mother-in-law about being uncomfortable with these contacts. Mother, however, appears oblivious to the issue and was unconcerned about Father's objections. It was also unreasonable for Mother to be secretive about her involvement with Chuck. Father is entitled to know pertinent information regarding Chuck or anyone Mother has a steady relationship with, because Father is entitled to know with whom the Minor Child is spending time, on what basis, and at what location.

It is crucial that the Minor Child have frequent interaction with both parents. She has a strong bond with both. It is also clear that the current arrangement does not work logistically. Father cannot be required to drive four hours to spend approximately two to three quality hours with the Minor Child on a particular evening.

The current arrangement also puts the Minor Child in a position where her best interests are subordinated to Mother's schedule. She spends a substantial amount of time in daycare. There is a degree of isolation. Unfortunately, Mother and the Minor Child are so rushed in the morning that Mother, while taking the time to cook the Minor Child a hot breakfast, cannot feed the Minor Child, who must eat the breakfast at the daycare.

This court finds that the Minor Child's best interests could be accomplished if she resides with Father during the week during the school year,[1] with Mother to have

---

1. Father would have to ensure that the Minor Child's special needs are appropriately addressed by the school at which she will be enrolled.

two evenings per week. Mother can choose her evenings contingent on what is most convenient for her based on her work schedule, and whether she intends to continue the Minor Child in her activities. She would return the Minor Child to Father or directly to school the next morning, on her way to work. The weekends would stay the same. This would enable the Minor Child to be with Father, or if he is unavailable, with his family after school, and not with a daycare. This would also facilitate custodial transfers, for Mother could pick the Minor Child up from Father's home upon leaving work. The increased driving and inconvenience to her would be minimal. Conversely, Father would be spared an inordinate amount of driving for a short time with the Minor Child. All of these things would increase the overall quality time of the Minor Child with a parent. Further, Mother's time would only be reduced by one evening per week.

During the summer, Mother would have Wednesdays, Thursdays and Fridays of each week, with Father to have Mondays and Tuesdays, and with the weekends continuing on an alternating basis. Currently, Mother's schedule, where she is at home from work on Wednesdays and Fridays, would permit her to be available for the Minor Child. Mother would pick up the Minor Child on Tuesday evenings after work. If it was her weekend, she would continue having custody with the Minor Child until Monday morning when she would return the Minor Child with her on her way to work. On Father's weekend, Father would pick up the Minor Child on Friday evenings.

It is important that the parties do not treat this decision as a win or a loss, but as an action taken by the court to facilitate the Minor Child's best interests and to promote

quality interaction between each party and the Minor Child. The parties will have to learn to get along better, which would start if they would begin seeing the other party's point of view. It would also be greatly beneficial to the Minor Child if the parties would remain magnanimous in their dealings with each other, willing to defer their own needs and interests in favor of the other party when appropriate, because all this can do is help the Minor Child. A child is not a possession to be hoarded, nor is she someone who should be embroiled in the parties' difficulties, or coaxed into accepting one side's position.

We enter the following order:

## ORDER

And now, November 1, 2006, after custody trial held, custody of the parties' minor child, Lauren Vollrath, born June 7, 1999, shall be as follows:

(1) The parties shall share legal custody.

(2) During the school year, plaintiff, Paul D. Vollrath (Father), shall have primary physical custody, with defendant, Tracy M. Vollrath (Mother), to have partial physical custody as follows:

(A) On alternating weekends, from Friday evening at 6:30 p.m. to Monday morning;

(B) Two evenings/overnights a week, the nights to be chosen by Mother, to be returned the next morning for school; and

(C) Mother shall be responsible for transportation both ways on the weekdays/overnights she chooses to have the Minor Child. On Mother's weekends, Father shall transport the Minor Child to Mother's home, at a time

agreed upon by the parties or, in lieu thereof, at 6:30 p.m., unless Mother is working at her office on Friday. In that event, Mother shall pick up the Minor Child from Father's home upon her completion of work and transport the Minor Child. The return, on Mother's weekends, shall be by Mother on Monday mornings, either to Father's home in sufficient time to enable her to prepare herself for school, or directly to the school.

(3) During the summer months, the parties shall continue to alternate weekends. During the week, Father shall have custody on Mondays and Tuesdays and Mother shall have custody on Wednesdays, Thursdays and Fridays. The transfer shall occur on Tuesday evenings, with Mother being responsible for transporting the Minor Child at the end of her work day. On Father's weekends, he shall pick up the Minor Child on Friday evenings, at a time to be agreed upon by the parties or, in lieu thereof, at 6:30 p.m. After Mother's weekends, Mother shall transport the Minor Child to Father's home on Monday mornings, on her way to work.

(4) Mother shall have Mother's Day each year and Father shall have Father's Day each year from 10 a.m. to 6 p.m.

(5) The parties shall share the Christmas holiday evenly, in accordance with their previous tradition. If they cannot so agree, Father shall have custody of the Minor Child in odd-numbered years from Christmas Eve at 1 p.m. to Christmas Day at 1 p.m., then Mother shall have custody from Christmas Day at 1 p.m. to December 26 at 1 p.m., with the parties to reverse the schedule on even-numbered years. Each party shall transport the Minor Child one way.

(6) The parties shall engage in co-parenting counseling with a counselor agreed to by the parties or, in lieu thereof, appointed by the court. The co-parenting counseling shall occur in Berks County.

(7) The Minor Child shall continue counseling with Lauren Fritz.

(8) The attached appendix is made a part of this order.

---

## APPENDIX TO ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on both parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for modification of this order. If these general rules conflict with any specific provisions of the order, the order shall prevail.

(1) In addition to the foregoing rights, both parties shall also have the following rights with respect to the child:

(A) The right to reasonable telephone contact with the child when he or she is in the other parent's custody.

(B) The right to be fully informed concerning the progress of the child in school and the child's medical status, including the right to obtain the necessary information directly from the child's school or medical practitioner; and

(C) The right to be informed in advance before any important decisions are made concerning the child and the opportunity to participate in those decisions.

(2) In the event of any serious illness of the child at any time, any party then having custody of the child shall immediately communicate with the other party by telephone or by any other means, informing the other party as to the nature of such illness, and during such illness, each party shall have the right to visit the child as he or she desires consistent with the proper medical care of the child.

(3) Neither party shall alienate nor permit to attempt to alienate the child from the other party. While in the presence of the child, neither parent shall make any remarks or do anything which is derogatory or uncomplimentary to the other and it shall be the duty of each parent to uphold the other parent as one the child should respect and love.

(4) Both parties shall provide each other with their addresses and telephone numbers of their residences and anytime they take a trip with the child out of the jurisdiction of Berks County in excess of three days.

(5) The parties shall not conduct arguments or heated conversation when they are together in the presence of their child.

(6) The parties shall, at all times, consider the children/child's best interests, and act accordingly. It is in a child's best interest to understand that he or she is trying to desperately cope with the fact of his or her parents' separation, and needs help in loving both parents, rather than interference or censure.

(7) Neither party shall question the child as to the personal lives of the other parent except insofar as necessary to insure the personal safety of the child. By this we mean that the child will not be used as a spy on the

other party. It is harmful to a child to be put in the role of spy.

(8) The parties should remember that they cannot teach their child proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the parent who maintains a double standard will lose the respect of his or her child.

(9) Weekend and evening visitation shall be subject to:

(A) Arrangements will be worked out beforehand between the parties without forcing the child to make choices and run the risk of parental displeasure. However, the child shall be consulted as to his or her schedule when appropriate.

(B) Visitation rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other party and to the need and desire of the minor child.

(C) If a party finds himself or herself unable to keep an appointment, he or she should give immediate notice to the other party, so as to avoid subjecting the child to unnecessary apprehension and failure of expectations.

(D) The party having custody of the child should prepare him or her both physically and mentally for the transfer of custody to the other party and have him or her available at the time and place mutually agreed upon.

(E) If either party or a child has plans which conflict with a scheduled visit and wish to change such visitation, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Pre-

determined schedules are not written in stone, and both parties should be flexible for the sake of the child.

(F) If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.

(10) If either party feels the other party has violated this order, they may petition the court as set forth in Pa.R.C.P. 1915.12.