**Leon v. Leon**

*Allan R. Kauffman,* for plaintiff.
*Katherine Rightmyer O'Brien,* for defendant.

LASH, *J.,* March 3, 2009—This court held a child custody trial on February 13, 2009. At issue is primary custody of the parties' three minor children. The court enters the following findings of fact:

## I. FINDINGS OF FACT

(1) Plaintiff, Edwin A. Leon (Father), is an adult individual who currently resides at 104 Douglass Street, Reading, Berks County, Pennsylvania.

(2) Defendant, Juana Leon (Mother), is an adult individual who currently resides at 143 Elm Street, Fleetwood, Berks County, Pennsylvania.

(3) The parties are the natural parents of three minor children, Edwin Leon, born October 1, 1995, Luis Leon, born June 15, 1998 and Austin Leon, born August 9, 2000 (minor children).

(4) The parties remain husband and wife, but have lived separate and apart since June 1, 2003, when Mother left the marital residence at 104 Douglass Street, Reading, Berks County, Pennsylvania.

(5) The within matter stems from Father's complaint in custody, filed by him on July 8, 2008. Prior to Father's filing, there was no formal custody action filed by either party.

(6) The parties were involved in several protection from abuse matters, resulting in orders which contained child custody provisions. The first protection from abuse action was filed by Mother in 1997, which was dismissed by order of January 22, 1998 due to Mother's failure to appear for the hearing. Mother filed a second action on November 7, 2003, resulting in a final order entered November 12, 2003, by agreement without admission. The order granted primary physical custody to Mother and did not provide any specified times for Father. This order was then amended by the Honorable Mary Ann Campbell on July 15, 2004, by agreement of the parties, such that Father would have custody of the minor children every Monday and Wednesday from 6 p.m. until the following morning at 7:30 a.m., and on alternate weekends from Friday at 6 p.m. until the following Monday morning at 7:30 a.m.

(7) Generally speaking, the parties have worked together informally regarding the custody schedule.

(8) Mother currently resides in a three bedroom duplex in the Fleetwood School District. She obtained this house through Habitat for Humanity.

(9) Mother resides with the three minor children, her paramour, George Ziegler, his two children, Logan, age 16, and Jaden, age 13, as well as Mother's child from a different relationship, Maximus, born August 3, 2005. Mother is expecting another baby, due June 14, 2009.

(10) Father resides alone in a five bedroom home, which he owns, in the Reading School District.

(11) Until the 2008-2009 school year, the minor children attended the Reading School District, primarily at the Riverside Elementary School, although the eldest child, Edwin, attended Gateway Technology School, a one-year program featuring computer training, for the sixth grade.

(12) Regarding the 2008-2009 school year, Mother enrolled the minor children in the Fleetwood Area School District, where they currently attend school.

(13) The children have special needs. Edwin has been diagnosed with a benign tumor. He is currently treating with a physician with offices in Hershey and Danville, and is required to see the doctor once every year, or on an as needed basis. Currently, there is no intention to become involved in more aggressive treatment. Edwin has been diagnosed with ADHD, primarily because of his failure to focus. He has some difficulty in school. Luis has been involved with Service Access Management and Progressions, having been diagnosed with oppositional defiant disorder and for anger management issues. He sees a TSS worker four hours a week and a behav-

ioral specialist three hours a week. The youngest child, Austin, has not been diagnosed but does exhibit some behavioral difficulties, including getting involved in fights. All three minor children receive wraparound therapy.

(14) Father is employed as a painter for Stokes in Morgantown, working Monday through Friday from 6 a.m. to 4:30 p.m. He states that he can leave as early as 2:30 p.m. to care for the minor children, as the additional two hours are overtime.

(15) Mother is currently employed by Concern as a child visitation supervisor. She works Monday through Friday from 9 a.m. to 5 p.m., but on occasion, her employment extends to as late as 6:30 p.m. Her employment is within a couple of blocks of her residence.

## II. DISCUSSION

In making disposition, this court considered the testimony of the parties and the in camera conferences with each of the minor children.

Father filed this petition to obtain primary custody of the minor children. He believes that the minor children want to reside with him. He also believes that Mother's household is too crowded. Currently, two adults and six children reside in a three bedroom home, and there is another child on the way. Father also states that Mother's house is not kept sufficiently clean. He also believes that she works late hours. For all these reasons, Father argues that Mother is incapable of sufficiently attending to the minor children's needs.

Father also alleges that Mother makes important decisions regarding the minor children without first consult-

ing him. She transferred the minor children to the Fleetwood School District in August 2008 without informing him. She has placed the minor children in counseling, which he feels is unnecessary. For example, he disputes whether Edwin has ADHD or whether he needs to take medications. These decisions have disrupted the minor children's lives and are not in their best interests.

On the other hand, when the minor children are at Father's house, they are in a clean, peaceful environment. They are able to relax and be themselves. Father's house is well kept. His home has more space for the minor children and no commotion. According to Father, the minor children prefer this environment, as well as the Reading School District.

Father states that he has more available time for the minor children than does Mother. If Father had primary custody, he would not work overtime, but would leave work at 2:30 p.m., sufficient time for him to be home when the minor children arrive from school.

Father claims a strong bond with each of the minor children. He advised that he spends time with them to help them with their education and also with their recreational activities.

Mother seeks to retain primary custody. She states that she has been the parent who provided the necessary day-to-day maintenance duties for the minor children. She has overseen their school work. She has attended to their medical needs, including seeking out counseling for their behavioral difficulties. In contrast, Father, according to Mother, is inattentive. He has never attended to the minor children's day-to-day needs. He

disputes the necessity of counseling, even though the minor children have exhibited substantial deficiencies.

Mother alleges that her household is more suitable for the minor children. She claims that her neighborhood is safer and the school district is superior. The minor children live within a couple of blocks of a park. Also, Mother's employment is close by her home so Mother would be available to respond quickly to the minor children's needs, if necessary.

Mother questions Father's sincerity in bringing this action. She claims that Father would sometimes drop the minor children off with his cousin, Nydia. More importantly, when Father would come to pick up the minor children, sometimes he would only take one or two of the minor children. He appears to have established a preference for the youngest child, Austin. As far as the minor children's preference, Mother claims that the minor children complain about some things in Father's house, and sometimes have no interest in being picked up by him for his visits.

At issue is primary physical custody. The paramount concern in a child custody proceeding is the best interests of the child. *Costello v. Costello,* 446 Pa. Super. 371, 375, 666 A.2d 1096, 1098 (1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be premised upon consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton,* 442 Pa. Super. 381, 385, 659 A.2d 1040, 1042 (1995).

Father presents as an intense, somewhat regimented individual. He appears to want to have things done his way. This works in a positive manner in some respects. There is more stability in Father's household. He has maintained a steady employment. He has owned his own home for some time and considers proper maintenance and cleanliness a top priority.

On the other hand, Father's strong personality clashed with Mother's laidback, relaxed demeanor. When the couple married, Mother was very young, and it appears that Father was frustrated by Mother's lack of urgency, as well as her housekeeping, which he considers to be substandard. This could very likely have been a catalyst for the breakup. Beyond that, there were several episodes where Father's intensive personality caused Mother to seek relief through a protection from abuse action.

As Mother claims, she appears to be more in tune with the minor children. Father's knowledge of pertinent information regarding the minor children, particularly in the area of education, is somewhat sketchy. Mother has established that she has a nurturing, hands-on approach that establishes a close affinity and understanding of the minor children's needs. While Father's point that he has more available time than Mother is well taken, nevertheless, it appears that Mother has made good use of the time that she has, while Father has been more detached.

The minor children do show some preference for Father's household, but this appears to be at least in part due to the fact that they have to share space with Mother and Stepfather and his children. There is a perception and a resulting resentment that the stepfather's children

are treated favorably in the household. There are also space constraints, which would contribute to the tension.

On balance, Mother's track record as the primary custodian, and her attentiveness to the minor children's special needs, outweigh Father's greater availability and quieter household. Mother has worked hard to maintain a household for herself and the minor children, initially as a single parent who found she could no longer reside with the minor children's father, then through performing community service hours, over and above her work schedule, to obtain appropriate, affordable housing. She is dedicated to her minor children.

For his part, Father presented several arguments which make sense. However, his investment over the years has not been as strong as Mother's. For these reasons, we will order that the current custody schedule be maintained.

We enter the following order:

## ORDER

And now, March 3, 2009, after trial held, custody of the parties' minor children, Edwin Leon, born October 1, 1995, Luis Leon, born June 15, 1998 and Austin Leon, born August 9, 2000, (minor children), shall be as follows:

(1) The parties shall share legal custody.

(2) Defendant, Juana Leon (Mother), shall have primary custody of the minor children.

(3) Plaintiff, Edwin A. Leon (Father), shall have partial physical custody every other weekend from Friday at 6

p.m. until the following Monday morning at 7:30 a.m., and every Monday and Wednesday from 6 p.m. until the following morning at 7:30 a.m., and at such other times as the parties may agree.

(4) Mother shall have custody on Mother's Day and Father on Father's Day from 9 a.m. to 7 p.m.

(5) The parties shall alternate the following named holidays, from 9 a.m. to 7 p.m., with Father having the first holiday after the date of this order: Easter, Memorial Day, July 4th, Labor Day and Thanksgiving.

(6) The parties shall alternate the Christmas holiday such that in even-numbered years, Mother shall have custody from December 24 at 2 p.m. to December 25 at 2 p.m., then Father shall have custody from December 25 at 2 p.m. to December 26 at 2 p.m.; with the parties to reverse the schedule on odd-numbered years.

(7) Each party shall be entitled to two weeks custody time with the minor children for purposes of vacation. The vacation schedule may be consecutive or nonconsecutive. The vacationing party shall provide the non-vacationing party with at least 60 days written notice of the dates and times for said vacation. If there is a scheduling conflict, Mother's preference shall control in odd-numbered years and Father's in even-numbered years.

(8) The holiday and vacation schedules shall take precedence over the regular custody schedule.

(9) The attached appendix shall be made a part of the within order.

## APPENDIX TO ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on both parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for modification of this order. If these general rules conflict with any specific provisions of the order, the order shall prevail.

(1) In addition to the foregoing rights, both parties shall also have the following rights with respect to the children:

(A) The right to reasonable telephone contact with the children when they are in the other parent's custody.

(B) The right to be fully informed concerning the progress of the children in school and the children's medical status, including the right to obtain the necessary information directly from the children's school or medical practitioner; and

(C) The right to be informed in advance before any important decisions are made concerning the children and the opportunity to participate in those decisions.

(2) In the event of any serious illness of the children at any time, any party then having custody of the children shall immediately communicate with the other party by telephone or by any other means, informing the other party as to the nature of such illness, and during such illness, each party shall have the right to visit the children as he or she desires consistent with the proper medical care of the children.

(3) Neither party shall alienate nor permit to attempt to alienate the children from the other party. While in the presence of the children, neither parent shall make any remarks or do anything which is derogatory or uncomplimentary to the other and it shall be the duty of each parent to uphold the other parent as one the children should respect and love.

(4) Both parties shall provide each other with their addresses and telephone numbers of their residences and anytime they take a trip with the children out of the jurisdiction of Berks County in excess of three days.

(5) The parties shall not conduct arguments or heated conversation when they are together in the presence of their children.

(6) The parties shall, at all times, consider the children's best interests, and act accordingly. It is in a child's best interest to understand that he or she is trying to desperately cope with the fact of his or her parents' separation, and needs help in loving both parents, rather than interference or censure.

(7) Neither party shall question the children as to the personal lives of the other parent except insofar as necessary to insure the personal safety of the children. By this we mean that the children will not be used as spies on the other party. It is harmful to a child to be put in the role of spy.

(8) The parties should remember that they cannot teach their children proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the parent who maintains a double standard will lose the respect of his or her child.

(9) Weekend and evening visitation shall be subject to:

(A) Arrangements will be worked out beforehand between the parties without forcing the children to make choices and run the risk of parental displeasure. However, the children shall be consulted as to their schedules when appropriate.

(B) Visitation rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other party and to the need and desire of the minor children.

(C) If a party finds himself or herself unable to keep an appointment, he or she should give immediate notice to the other party, so as to avoid subjecting the children to unnecessary apprehension and failure of expectations.

(D) The party having custody of the children should prepare them both physically and mentally for the transfer of custody to the other party and have them available at the time and place mutually agreed upon.

(E) If either party or a child has plans which conflict with a scheduled visit and wish to change such visitation, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Predetermined schedules are not written in stone, and both parties should be flexible for the sake of the children.

(F) If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.

(10) If either party feels the other party has violated this order, they may petition the court as set forth in Pa.R.C.P. 1915.12.