### Rivera v. Pineiro-Garcia

*Peter David Maynard,* for the plaintiff.
*Jacqueline R. Mark,* for the defendant.

LASH *J.,* April 8, 2010—The matter before this court is the petition of plaintiff, Alexis Rivera (Father), to modify the child custody order entered in this case by agreement on December 15, 2008, regarding custody of the parties' minor child, Aron J. Pineiro, born September 28, 2007. Trial was held on April 6, 2010. The Court enters the following Findings of Fact:

## I. FINDINGS OF FACT

(1) Plaintiff, Alexis Rivera (Father), is an adult individual who currently resides at 916 Moss Street, Reading, Berks County, Pennsylvania 19604.

(2) Defendant, Yahaira Pineiro-Garcia (Mother), is an adult individual who currently resides at 1008 Scott Street, Reading, Berks County, Pennsylvania 19611.

(3) The parties are the natural parents of Aron J. Pineiro, born September 28, 2007 (minor child).

(4) This matter initially came before the court through Father's complaint for custody filed September 16, 2008. After appearing before a custody master, the parties

agreed to resolve the case, as set forth in an order entered December 15, 2008. That order provided, among other things, that Mother would have primary physical custody of the minor child and Father would have partial custody every Monday, Wednesday, and Friday from 11 a.m. until 1 p.m., and alternate weekends from Saturday at 1 p.m. until 7 p.m., and Sunday from 1 p.m. until 7 p.m. Father's custody time was to be supervised by the paternal grandmother, Luz Rivera, who would also provide all transportation.

(5) On May 19, 2009, Father filed a petition to modify the custody order in conjunction with a motion to hold Mother in contempt, setting forth, among other things, that Mother had refused to allow Father to visit with the minor child, that the minor child suffered injuries from unknown sources requiring Father to take the minor child to the hospital, and because Mother's home is unclean and unsanitary, and the minor child's continued residence there would not be in the minor child's best interest.

(6) The matter was set for a hearing on June 10, 2009. At that time, the parties reached an agreement whereby the order of December 15, 2008 would be modified to provide, among other things, that Mother would have primary physical custody and Father would have partial physical custody every Monday, Wednesday, and Friday from 11 a.m. to 3 p.m., and on alternate weekends from Saturday at 11 a.m. until 6 p.m., and Sunday from 11 a.m. until 6 p.m. The requirement that Father's visits be supervised was rescinded. Father withdrew his petition for contempt.

(7) On or about August 11, 2009, Father filed the within petition for modification, alleging, among other things, that Father never agreed to the terms for modification as set forth in the order of June 30, 2009. Father requested that he be granted primary physical custody of the minor child.

(8) Father currently resides with his parents, Luz and Juan Rivera, in a four-bedroom home. Also residing there temporarily is Father's 10-year-old cousin, Juan Louis Rivera.

(9) Father has never been employed. He receives SSI due to mental limitations, which Father described as being "slow."

(10) Mother resides in a three-bedroom home with the subject minor child and her other three children, Yarelis, age 7, Angel, age 4, and Yasteris, 10 months. Mother has a steady boyfriend, who occasionally stays over on weekends.

(11) Mother is also unemployed, since January 2010.

(12) The minor child used to spend weekdays in daycare, however, Mother cancelled the daycare for financial reasons after losing her employment.

(13) The minor child is considered developmentally delayed, currently functioning at the level of a 1 and 1/2 year old, with speech impediments. The minor child receives speech therapy twice a week.

(14) There were several protection from abuse petitions filed by the parties. Mother obtained a final order

against Father, by agreement without admission, on June 11, 2008, for a period of one year. Father obtained a temporary order against Mother on his own behalf in a separate matter, and obtained one on behalf of the minor child and against Mother, both of which were subsequently withdrawn by Father.

## II. DISCUSSION

Father is seeking a 50/50 shared custody arrangement on a week-on, week-off basis. Mother desires to retain primary custody, although she is willing to grant expanded time to Father to permit overnights on weekends, in addition to the time already provided under the order of June 30, 2009. In making disposition, this court considered the testimony of the parties and the exhibits submitted.

The primary thrust of Father's argument is that he is being denied time with the minor child. He did not know Mother's current address. He does have her cell phone number, however, she does not answer the phone when he calls. Father states that Mother's boyfriend is antagonistic toward him. As a result, Father tries to avoid any direct contact with Mother or the boyfriend and, therefore, does not pick the minor child up on weekends, limiting himself to picking up the minor child from daycare on weekdays. However, since the minor child no longer goes to daycare, his time is further limited. Father has relied on the paternal grandmother to pick up the minor child on his behalf, however, this is now a problem because of hard feelings between her and Mother.

Father believes he can provide a good household for the minor child. when he has the minor child, they interact in a playful manner. His house is spacious. He is always available to care for the minor child, as is the paternal grandparents, who also do not work.

Mother provides a different point of view. She states that she would like Father to have the minor child during his times and other times when he asks, however, he does not ask, and even declines visits when Mother inquires whether he would want some time. While Mother agrees that Father loves the minor child a great deal, she questions the extent of his commitment.

On the other hand, the paternal grandmother was very active in obtaining as much custody time with the minor child as possible. Initially, Mother agreed to allow the paternal grandmother to pick up the minor child whenever she asked. However, the paternal grandmother would seek time nearly every day. As a result, Mother began insisting on following the schedule contained in the court order. Mother states that the paternal grandmother then became upset and since that time, the two have had hard feelings. The paternal grandmother stopped picking up the minor child, and since Father was only sporadically involved in picking up the minor child, his visits became even less frequent.

Mother notes that Father has not been involved in the minor child's speech therapy, nor with medical visits or treatments. The minor child had to have surgery on his ears to implant tubes. Father did not participate. Father states that he would have participated, however, Mother

never notified him of medical appointments. The speech sessions also create logistical concerns, as the therapist conducts the sessions at the minor child's home. As neither party feels comfortable in the other person's home, and since Mother was the party involved in the speech therapy, all speech therapy sessions were ultimately conducted at Mother's house, with Father not being present.

At issue is primary physical custody. The paramount concern in a child custody proceeding is the best interests of the child. *Costello v. Costello,* 446 Pa. Super. 371, 375, 666 A.2d 1096, 1098 (1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be premised upon consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton,* 442 Pa. Super. 381, 385, 659 A.2d 1040, 1042 (1995).

This custody dispute appears to stem from two problems. First, the parties do not communicate with each other. This problem is exacerbated by Father's limitations. Secondly, there are hard feelings between Father and Mother's boyfriend and also between Mother and the paternal grandmother. Because these problems exist, Father has had limited contact with the minor child.

The parties are going to have to make a greater effort in working together. Because of Father's limitations, the paternal grandmother should be able to be involved in facilitating the transfer of the minor child, but should not otherwise interfere. Further, she should not get upset

because Mother insists on following the schedule contained in the order. Additionally, Mother should advise her boyfriend to cease his interaction with Father during custody transfers. For his part, Father should make more of an effort to spend time with his minor child, not accepting any difficulty that arises as an excuse.

This court is not prepared to award shared custody. Mother's proposal to permit Father to have custody every other weekend starting on Friday at 11 a.m. until Monday at 3 p.m. makes sense. Father would otherwise retain his normal Monday, Wednesday, and Friday schedule. The parties would share transportation equally, with the party with custody dropping off the minor child. Dropping off rather than picking up may alleviate some of the issues raised in this matter.

We enter the following order:

## ORDER

And now, April 8, 2010, after trial held, custody of the parties' minor child, Aron J. Pineiro, born September 28, 2007, shall be as follows:

(1) The parties shall share legal custody of the minor child.

(2) Defendant, Yahaira Pineiro-Garcia (Mother), shall have primary physical custody of the minor child.

(3) Plaintiff, Alexis Rivera (Father), shall have partial custody of the minor child as follows:

(A) Every other weekend from Friday at 11 a.m. to the following Monday at 3 p.m.;

(B) Every Monday, Wednesday, and Friday from 11 a.m. to 3 p.m.; and

(C) At such other times as the parties may agree.

(4) Mother shall have custody on Mother's Day and Father on Father's Day each year from 8 a.m. to 6 p.m.

(5) The parties shall alternate the Christmas holiday such that in even-numbered years, Mother shall have custody from December 24 at 2 p.m. to December 25 at 2 p.m., then Father shall have December 25 at 2 p.m. to December 26 at 2 p.m., with the schedule to be reversed in odd-numbered years.

(6) The parties shall alternate the following named holidays, from 8 a.m. to 8 p.m., with Mother having the next holiday after the date of this order: Easter, Memorial Day, July 4th, Labor Day, and Thanksgiving.

(7) Each party shall be entitled to one week of uninterrupted time with the minor child for purposes of vacation. The vacationing party shall provide the non-vacationing party with written notice at least 30 days in advance. If there is a conflict in the vacation schedule, Mother's presence shall control in odd-numbered years and Father's in even-numbered years.

(8) The holiday and vacation schedules shall take precedence over the regular custody schedule.

(9) The parties shall share transportation equally, with the party having custody of the minor child dropping off the minor child at the other party's home, unless the parties agree to some other arrangement.

(10) The attached appendix shall be made a part of the within order.

## APPENDIX TO ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on both parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for modification of this order. If these general rules conflict with any specific provisions of the order, the order shall prevail.

(1) In addition to the foregoing rights, both parties shall also have the following rights with respect to the child:

(A) The right to reasonable telephone contact with the child when he or she is in the other parent's custody.

(B) The right to be fully informed concerning the progress of the child in school and the child's medical status, including the right to obtain the necessary information directly from the child's school or medical practitioner; and

(C) The right to be informed in advance before any important decisions are made concerning the child and the opportunity to participate in those decisions.

(2) In the event of any serious illness of the child at any time, any party then having custody of the child shall immediately communicate with the other party by telephone or by any other means, informing the other party as to the nature of such illness, and during such illness, each party shall have the right to visit the child as he or she desires consistent with the proper medical care of the child.

(3) Neither party shall alienate nor permit to attempt to alienate the child from the other party. While in the presence of the child, neither parent shall make any remarks or do anything which is derogatory or uncomplimentary to the other and it shall be the duty of each parent to uphold the other parent as one the child should respect and love.

(4) Both parties shall provide each other with their addresses and telephone numbers of their residences and anytime they take a trip with the child out of the jurisdiction of Berks County in excess of three days.

(5) The parties shall not conduct arguments or heated conversation when they are together in the presence of their child.

(6)The parties shall, at all times, consider the child's best interests, and act accordingly. It is in a child's best interest to understand that he or she is trying to desperately cope with the fact of his or her parents' separation, and needs help in loving both parents, rather than interference or censure.

(7) Neither party shall question the child as to the personal lives of the other parent except insofar as necessary to insure the personal safety of the child. By this we mean that the child will not be used as a spy on the other party. It is harmful to a child to be put in the role of spy.

(8) The parties should remember that they cannot teach their child proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the parent who maintains a double standard will lose the respect of his or her child.

(9) Weekend and evening visitation shall be subject to:

(A) Arrangements will be worked out beforehand between the parties without forcing the child to make choices and run the risk of parental displeasure. However, the child shall be consulted as to his or her schedule when appropriate.

(B) Visitation rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other party and to the need and desire of the minor child.

(C) If a party finds himself or herself unable to keep an appointment, he or she should give immediate notice to the other party, so as to avoid subjecting the child to unnecessary apprehension and failure of expectations.

(D) The party having custody of the child should prepare him or her both physically and mentally for the transfer of custody to the other party and have him or her available at the time and place mutually agreed upon.

(E) If either party or a child has plans which conflict with a scheduled visit and wish to change such visitation, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Predetermined schedules are not written in stone, and both parties should be flexible for the sake of the child.

(F) If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.

(10) If either party feels the other party has violated this order, they may petition the court as set forth in Pa. R.C.P. 1915.12.