**Berryman v. Berryman**

*Nuria Sjolund,* for plaintiff.
*Jeffrey R. Boyd,* for defendant.

LASH, *J.,* March 31, 2011—This court held a child custody trial on March 24, 2011. The court enters the following findings of fact:

## I. FINDINGS OF FACT

1. Plaintiff, James Berryman (hereinafter "father"), is an adult individual who currently resides at 205 Mine Street, Mertztown, Berks County, Pennsylvania 19539.

2. Defendant, Belinda Berryman (hereinafter "mother"), is an adult individual who currently resides at 425 Hahns Dairy Road, Palmerton, Pennsylvania 18071.

3. The parties are the natural parents of two (2) minor children, Dylan J. Berryman, born May 5, 1998, and Alyx L. Berryman, born May 25, 2000, (hereinafter "minor children").

4. The minor children were born during the marriage of the parties.

5. The parties were married on July 20, 1996 and separated on July 1, 2010, when mother moved from the marital residence to her current address.

6. Mother currently resides with her paramour, Matthew Steinmetz, his daughter, Makayla Smale, and his grandmother, who owns the house.

7. Mr. Steinmetz is the putative father of another child, Marissa Steinmetz, 6 years old. Makayla and Marissa have separate mothers. Mr. Steinmetz has been denied visits of Marissa by the mother and is now contesting paternity.

8. Mother and Mr. Steinmetz are expecting a child together, due in approximately five (5) months.

9. Father resides with the minor children.

10. Father currently resides in the Brandywine Heights School District. Mother currently resides in the Palmertown Area School District.

11. The parties reside approximately 45 minutes apart.

12. Father is self-employed as a truck driver, working Mondays through Fridays, from 9:00 a.m. to approximately 4:00 p.m. to 5:00 p.m.

13. The minor children are finished with school at approximately 2:50 p.m. since father has not returned from work by that time, the minor children are cared for by the paternal grandparents, usually at father's home until he arrives. The grandparents return to father's house the next morning to enable father to leave for work, sometimes as early as 3:00 a.m.

14. Mother is self-employed working from her home as a wholesale travel consultant and as a secretary in a small engine repair business, her hours being Monday through Friday from 9:00 a.m. to 2:00 p.m. Her work schedule is flexible and light as the businesses are of recent origin, permitting her to adjust her hours to accommodate the minor children's schedules. Mother is also collecting unemployment benefits.

15. Father filed the above-captioned custody action in conjunction with his divorce complaint on or about August 5, 2010.

16. On September 3, 2010, this court issued a

temporary order of court providing, among other things, that the parties would share legal custody, that father would have primary physical custody, with the minor children attending the Brandywine Middle School, and with mother to have partial custody three (3) weekends each month, from Fridays at 4:00 p.m. to Sundays at 6:30 p.m., provided that the Friday of mother's weekends falls within the month.

17. Both households have sufficient accommodations to rear the minor children.

18. The minor children are both doing well in school. Additionally, the minor children engage in sports, with Dylan being an avid football player and Alyx enjoying volleyball and swimming.

## II. DISCUSSION

Both parties seek primary custody. In making disposition, this court considered the testimony of the parties, mother's paramour, Matthew Steinmetz, father's aunt, Ann Herman, Alyx's guidance counselor at school, Heather Kulp, the minor children's psychological counselor, Louise Sander, friends of father, Howard and Kimberly Moyer, the in camera testimony of the minor children, and the documents submitted as exhibits.

Mother testified regarding her strong love and affection, as well as her commitment to the minor children. She set forth that when the parties resided together, she was the sole caretaker of the minor children, providing all the daily maintenance. With little exception,

it was always she who handled the medical and dental appointments, attended school meetings, and helped with homework. For the most part, father was unavailable due to his extensive work schedule as a truck driver. Father would leave early in the morning and return late at night, sometimes staying for as little as two (2) hours, then would be back on the road. He often slept in his tractor, and could be gone for days.

In her current situation, mother has a very flexible schedule, as does her paramour, both of whom can attend to the immediate needs of the minor children. They have ample room at the house. The minor children get along well with Mr. Steinmetz's daughter, Makayla. There is also plenty to do at the house, as the couple like to engage in outdoor recreational activities, including boating, snowboarding, and four-wheeling.

Mother expressed concerns about father's capacity to properly parent the minor children. For one, she believes he is still a part-time parent due to his work schedule. While father states that he has switched jobs and now is able to be home from work much earlier, around 4:00 p.m. to 5:00 p.m., mother questions whether this is actually the case. Mother believes that the paternal grandparents are required to perform many of the parental chores.

Mother has additional concerns about the paternal grandparents watching the minor children. She relates incidents where the paternal grandfather was inappropriate toward her, making unwanted sexual advances. She does

not trust the grandfather, and opposes the grandfather being alone with her daughter. She points out that the parties agreed in August of 2010 on the record that father would ensure that grandfather was never alone with the daughter, but that father has breached this promise.

Mother is also concerned about father's demeanor. She accuses him of being short tempered, yelling at her in front of the minor children, and yelling at the minor children directly. The minor children and, in particular, the parties' daughter, are particularly sensitive to this browbeating. Some of Alyx's difficulties relate to school work, as she has more difficulty than her brother in acquiring good grades. According to mother, father is very hard on Alyx, causing her to be afraid to fail, and making her think that she has to have 100 percent scores on every test. This has caused her extreme anxiety, which is being addressed in counseling.

Mother also points out that father refuses to cooperate with her. She and Mr. Steinmetz testified that they have made an effort to try to work together with father, to meet and perhaps engage in recreational activities together, to help form a "blended" family, and to make it easier for the minor children, but father has refused.

Mother believes that the minor children want to reside with her. She states that Alyx has related to her that she wants to attend the Palmerton School District immediately so that she can start making new friends. Dylan, who wants to be a pro football player, would be able to continue

with football in Palmerton School District. Unfortunately, according to mother, Brandywine Heights School District does not offer football programs.

Mother also discussed father's involving the minor children in the parties' domestic difficulties. She testified that father has discussed spousal support issues, and the status of the marital home, matters which should never involve the minor children.

Louise Sander, the minor children's therapist, also testified. She related her concerns regarding Alyx's anxiety, which she considered to be substantial. She corroborated mother's testimony regarding Alyx's fear of failure and need to please her father.

Father stresses the continuity and stability available for the minor children at his home. He continues to reside in the marital residence and will do so in the foreseeable future. The minor children enjoy Brandywine Heights School and are doing well there. In fact, Alyx has been on the honor roll for the first two (2) quarters of the 2010-2011 school year, the first time she has reached this achievement.

Due to the changes in his work schedule, father is available for the minor children and is able to provide them with all the needs of a parent. He is very invested in their schooling, assisting with homework and overseeing their success. He is also involved recreationally, enjoying immensely Dylan's summer football programs, for example.

Father agrees that there are some periods of time when the paternal grandparents watch the minor children. He does not believe he should be penalized because he maintains a full-time work schedule, particularly since mother's availability is due to her being terminated from her employment, as both she and Mr. Steinmetz, who met at their mutual employment, were laid off due to their fraternization. He contends that the paternal grandparents are proper caretakers, and denies that the paternal grandfather would cause any problems for Alyx.

Father denies that he is excessive in his supervision. He believes that the minor children want to reside with him and that they are doing very well under his care. He points out that Alyx is doing better in school than ever, which belies the notion that his behavior is having an adverse impact on her.

Father points out that the minor children's issues stem from mother's decision to move from the marital home and take up residence with her paramour, approximately 45 minutes from the marital home. This caused a major disruption in the minor children's lives. He believes additional disruptions, such as relocating, enrolling in a new school district, and having to make new friends, would also be harmful to the minor children.

Father points out that the continuing animosity between the parties stems from mother and her paramour. Mr. Steinmetz enjoys meddling in the parties' affairs, sending father an inordinate number of text messages

which serve no useful purpose. Further, it was Mr. Steinmetz who initiated the conversations with the minor children about the domestic issues, stating such things as "your father's not going to be able to keep his house." Father stated he was only responding to questions from the minor children, who learned these things from Mr. Steinmetz. Father also notes that Mr. Steinmetz is an agitator, upsetting Dylan by calling him "young James," also calling father "Pops," and on one occasion, tweaking father's cap, causing him to accidently strike father in the face, resulting in criminal harassment charges being lodged. Mr. Steinmetz would also playfully pull Dylan's trousers down. The minor children's counselor, Ms. Sander, acknowledged some of Mr. Steinmetz's indiscretions, and advised him to desist from his antics. He, apparently, has complied with this directive.

The paramount concern in a child custody proceeding is the best interests of the child. *Costello v. Costello,* 666 A.2d 1096, 1098 (Pa. Super. 1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be premised upon consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton,* 659 A.2d 1040, 1042 (Pa. Super. 1995).

Mother has a strong bond with the minor children, developed through nurturance and her hands on involvement over the years. The minor children are very comfortable with her and enjoy the recreational activities

at her new residence. She is more lenient in discipline than father. She has a strong commitment to the minor children's schooling and in the continuation of their sporting activities.

Despite the limitations caused by his work schedule, father appears to also have a good bond with the minor children. Since the parties' separation, he has adapted to his new status as a single father, becoming hands on in the care and supervision of the minor children. His relationship with Dylan appears particularly strong. However, the relationship with Alyx is more complicated, due to her sensitive nature. Father's method of supervision of school related issues has borne fruit in the form of honor roll level grades, but at what cost? Alyx exhibits self doubt. Her view of herself can be further compromised with negative reinforcement. It is also apparent that Alyx does not respond well to intensity. If these concerns are not rectified, neuroses could develop which would affect Alyx's ability to function as an adult.

Father appears to want what is best for his minor children and believes that his methods serve that purpose. However, with regard to Alyx, if he would adapt his method to account for her sensitive makeup, emphasizing positive reinforcement, making it known to her how valuable, important, and special she is, helping her to acquire self-discipline in lieu of receiving external discipline from him, it would help Alyx in her psychological development and would also increase her capacity to do well in school. Father should seek assistance

from Alyx's counselor on this issue.

Regarding the concerns of continuity and stability, we agree with father that he is best able to continue to provide these important factors for the minor children. The minor children enjoy residing in the Brandywine School District and thrive there, and if residing with father they would live in the same house and continue to maintain the same general lifestyle to which they are accustomed. Mother, however, requests that the minor children be uprooted to accommodate her new lifestyle. While she never "abandoned" the minor children as father suggests, she has chosen to move a substantial distance away, into a new school district, to reside with another man. This decision has cost her a marriage and full-time employment. Most importantly, the minor children have had to learn to cope with the reality of residing in two (2) households.

Further, the level of stability in mother's household remains in question. Mother has moved from a long term intact marriage into a relationship with a substantially younger man who is residing in the home of his grandmother. The couple have experienced a termination from their employment and are now collecting unemployment benefits while they attempt to start up two (2) separate businesses together. Mother's paramour has two (2) children from two (2) other relationships and now is expecting his third child, from this, his third relationship.

There is evidence that there have been some issues between mother and her paramour. On one occasion, father received a text message from mother stating that she was being "kicked out" from the house by her paramour. Mother admitted that she sent the text, but denied that she was ever kicked out or that there was ever any concern that she might be kicked out. Given the clear message of the text, mother's statement lacks credibility. On a second occasion, mother, for a period of a couple of days, failed to make contact with father or the minor children, which father found to be very unusual. When mother resumed contact, she never fully explained the reason for her hiatus, except to say, "I took too many pills."

Since mother has committed to the relationship with her paramour, his capacity as a stepparent must also be evaluated. Few details were provided in this area at the time of trial. We do know that Mr. Steinmetz enjoys recreation. He has also been portrayed as immature, being consistently involved in sophomoric hyjinks, which establish him as a pest and annoying. We must wonder whether Mr. Steinmetz has the maturity needed to accept the responsibilities of performing the difficult duties of a stepparent to these two (2) children, not to mention the requirements soon to be imposed as the father of a newborn infant.

It is also clear that these two (2) minor children need frequent contact with both parents. Both parents acknowledge this fact. Unfortunately, a schedule involving day-to-day interaction between households is

not practical, due to the distance between the parties' residences.

The only workable solution is to provide father with primary custody during the school year and mother with primary custody during the summer months, with the non-custodial parent to have three (3) weekends per month and one (1) weeknight. Having the minor children reside with mother during the summer achieves several purposes. First, the minor children will be watched by a parent, not by a grandparent. Secondly, the recreational opportunities emphasized by mother and her paramour could be enjoyed by the minor children on the summer weekdays. Third, the important goal of maintaining continuity and stability is met. The minor children would be permitted to reside in the same home and continue in Brandywine Heights School District where they are doing well. Most importantly, over the course of the year, and excluding when the minor children are sleeping or at school, the parties would each have approximately the same level of contact with the minor children. If, conversely, the minor children resided with mother during the school year and with father during the summer, mother's weekdays during the school year would consist of evenings after school and father's weekdays during the summer would also be limited to evenings, due to his work schedule, with the minor children being primarily cared for by the paternal grandparents during the day.

Two (2) other comments are appropriate. First, there has been no evidence to suggest that the paternal

grandfather poses any threat to Alyx. We accept mother's testimony that the paternal grandfather made inappropriate advances toward her. However, there is no basis to find that the grandfather's misconduct toward an adult female unrelated by blood would translate into similar contact toward a minor granddaughter. We also note that grandfather's conduct began prior to the birth of the minor children and that even though these things took place, mother, nevertheless, permitted the grandparents access to the minor children, at least until the separation. That being said, at a previous court hearing, it was everyone's understanding that father would ensure that the paternal grandfather would not be alone with Alyx, and that, nevertheless, he continued to allow this contact. He attempted to explain this away semantically, but the fact is he understood what was required and failed to honor the requirement. The conduct of father in disregarding the clear understanding of the parties was done in bad faith and is subject to a sanction under 23 Pa.C.S.A. § 5339 in the form of counsel fees, which we impose in the amount of five hundred dollars ($500.00).

The second comment is a reiteration of our concern for Alyx's emotional health. Counseling shall continue, with father to participate. Father shall also be in contact with the guidance counselor at the school district to help him to seek out and develop approaches to his education supervision which will contribute positively to Alyx's psychological development, as well as her prosperity as a student.

[We add one final note. Subsequent to the trial, counsel for the parties contacted the court regarding one or both of the parties, and/or Mr. Steinmetz, having improper communications with the minor children regarding their testimony and the general testimony of the trial. Through their counsel, each party complained that the other was the party at fault for these communications. These circumstances did not affect the decision of this court except to add a sentence in the order to require that the parties, Mr. Steinmetz, and other significant others shall refrain from any further conduct. It goes without saying that this conduct is inappropriate and borders on reprehensible. Any further conduct of this manner will be a violation of the within order and subject to sanctions, which could include restrictions involving the minor children.]

We enter the following order:

## ORDER

And now, March 31, 2011, after trial held, custody of the parties' minor children, Dylan J. Berryman, born May 5, 1998, and Alyx L. Berryman, born May 25, 2000, (hereinafter "minor children"), shall be as follows:

1. The parties shall share legal custody.

2. Plaintiff, James Berryman (hereinafter "father"), shall have primary physical custody of the minor children during the school year. The school year is defined as commencing one (1) week prior to the start of the school year through one (1) week after the expiration of the school year.

3. Defendant, Belinda Berryman (hereinafter "mother"), shall have primary custody of the minor children during the summer months.

4. The non-custodial party shall have partial custody of the minor children:

a) three (3) weekends each month from Fridays at 4:00 p.m. to Sundays at 6:30 p.m., the weekends to be defined to include weekends where the Friday falls within the month; and

b) one (1) week night per week from 5:00 p.m. to 8:00 p.m., the weeknight to be agreed upon by the parties or, in lieu of an agreement, on Wednesday nights.

5. Mother shall have mother's day each year and father shall have father's day each year from 10:00 a.m. to 6:30 p.m.

6. The parties shall alternate Thanksgiving day each year, with mother having Thanksgiving day on odd-numbered years and father on even-numbered years, the times to be agreed upon by the parties or, in lieu thereof, from 10:00 a.m. to 8:00 p.m.

7. The parties shall alternate the Christmas holiday each year, such that during odd-numbered years, father shall have custody on Christmas Eve from 1:00 p.m. to Christmas day at 1:00 p.m., with mother to have Christmas day from 1:00 p.m. to December 26 at 1:00 p.m., with the schedule to reverse on even-numbered years.

8. The minor children shall continue in counseling. Additionally, father shall participate in group counseling with Alyx to enable father and Alyx to work through any issues regarding their relationship, including but not limited to, the method of education supervision.

9. Neither party, nor Matthew Steinmetz, nor any prospective paramour or spouse of either party, either directly or indirectly, shall have any discussions with either minor child about any court proceedings, including divorce, custody, support, or any other matters arising from the litigation, any financial matters involving the parties at any time, nor shall they discuss with the minor children any testimony the minor children may have provided to the court or that they will provide, nor attempt to influence the minor children in any way in these areas.

10. If either party is planning to relocate with the child(ren) and the relocation will significantly impair any other party's exercise of their custodial rights, the relocating party is obligated to provide a detailed notice and counter-affidavit by certified mail, return receipt requested, to all individuals who have custody rights to the child(ren) at least sixty (60) days in advance of the proposed relocation in compliance with 23 Pa. C.S.A. Section 5337.

11. Under the authority of 23 Pa.C.S.A. § 5339, this court awards mother the sum of five hundred dollars ($500.00) in counsel fees from father for reasons set forth in the attached opinion.

12. The attached appendix shall be made a part of the within order.

13. This order shall be considered a final order finally resolving the issues raised in the complaint for custody filed by father.

## APPENDIX TO ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on both parties, the breach of which could become the subject of contempt proceedings before this court, or could constitute grounds for modification of this order. If these general rules conflict with any specific provisions of the order, the order shall prevail.

1. In addition to the foregoing rights, both parties shall also have the following rights with respect to the children:

A. The right to reasonable telephone contact with the children when they are in the other parent's custody.

B. The right to be fully informed concerning the progress of the children in school and the children's medical status, including the right to obtain the necessary information directly from the children's school or medical practitioner; and

C. The right to be informed in advance before any important decisions are made concerning the children and the opportunity to participate in those decisions.

2. In the event of any serious illness of the children at any time, any party then having custody of the children shall immediately communicate with the other party by telephone or by any other means, informing the other party as to the nature of such illness, and during such illness, each party shall have the right to visit the children as he or she desires consistent with the proper medical care of the children.

3. Neither party shall alienate nor permit to attempt to alienate the children from the other party. While in the presence of the children, neither parent shall make any remarks or do anything which is derogatory or uncomplimentary to the other and it shall be the duty of each parent to uphold the other parent as one the children should respect and love.

4. Both parties shall provide each other with their addresses and telephone numbers of their residences and anytime they take a trip with the children out of the jurisdiction of Berks County in excess of three (3) days.

5. The parties shall not conduct arguments or heated conversation when they are together in the presence of their children.

6. The parties shall, at all times, consider the children's best interests, and act accordingly. It is in a child's best interest to understand that he or she is trying to desperately cope with the fact of his or her parents' separation, and needs help in loving both parents, rather

than interference or censure.

7. Neither party shall question the children as to the personal lives of the other parent except insofar as necessary to insure the personal safety of the children. By this we mean that the children will not be used as spies on the other party. It is harmful to a child to be put in the role of spy.

8. The parties should remember that they cannot teach their children proper moral conduct by indulging in improper conduct themselves. Children are quick to recognize hypocrisy, and the parent who maintains a double standard will lose the respect of his or her child.

9. Weekend and evening visitation shall be subject to:

A. Arrangements will be worked out beforehand between the parties without forcing the children to make choices and run the risk of parental displeasure. However, the children shall be consulted as to their schedules when appropriate.

B. Visitation rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other party and to the need and desire of the minor children.

C. If a party finds himself or herself unable to keep an appointment, he or she should give immediate

notice to the other party, so as to avoid subjecting the children to unnecessary apprehension and failure of expectations.

D.   The party having custody of the children should prepare them both physically and mentally for the transfer of custody to the other party and have them available at the time and place mutually agreed upon.

E.   If either party or a child has plans which conflict with a scheduled visit and wish to change such visitation, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Predetermined schedules are not written in stone, and both parties should be flexible for the sake of the children.

F.   If a party shows up for a visit under the influence of alcohol or drugs, the visit may be considered forfeited on those grounds alone.

10.  If either party feels the other party has violated this order, they may petition the court as set forth in Pa.R.C.P. 1915.12.