**Fletcher v. Mues.**

*J. Peter Landis*, for plaintiff.
*Thomas L. Klonis*, for defendant.

LASH, *J.*, January 2, 2013—Plaintiff, Timothy C. Fletcher (hereinafter "father"), filed a complaint in custody, seeking primary custody of the parties' minor daughters. Trial was held on December 18, 2012. This court enters the following findings of fact:

## I. FINDINGS OF FACT

1. Plaintiff, Timothy C. Fletcher (hereinafter "father"),

is an adult individual who currently resides at 79 Clematis Street, Browns Mills, Burlington County, New Jersey 08105.

2. Defendant, Stephanie Mues (hereinafter "mother"), is an adult individual who currently resides at 710 North Third Street, Apartment 3A, Reading, Berks County, Pennsylvania 19601.

3. The parties are the parents of two (2) minor daughters, A.T.F., born August 24, 2002, and I.C.F., born July 10, 2007, (hereinafter "minor children").

4. The parties were previously husband and wife, separating in May of 2011 and becoming divorced on September 13, 2011.

5. Father is employed in the United States Marine Corps, having enlisted in the service approximately eight (8) years ago. His current rank is Sergeant E-5. Father is stationed at Fort Dix, New Jersey.

6. Father's work schedule is Monday from 9:00 a.m. to 4:30 p.m. and Tuesday through Friday from 7:30 a.m. to 4:30 p.m. He states his schedule is flexible. Father was deployed twice, once to Iraq and once to Afghanistan. He states there are no current plans for a future deployment. He also states that he will not be transferred from Fort Dix for at least two (2) years, until he ascends in rank.

7. On November 26, 2012, father remarried to Ashley Figueroa. The couple have a minor son, E.I.F., born November 10, 2012. His wife has another son, born June 28, 2009.

8. Father and his wife do not currently reside together,

keeping their residency plans on hold until the within custody case is resolved. His wife resides with her mother in Bayonne, New Jersey, and father resides on off-base housing with a roommate in the Pemberton School District. The couple plan to move on base into a three (3) or four (4) bedroom home. In that event, father would reside in the New Hanover school District, and the minor children, if he had primary custody, would attend the C.B. Lamb Elementary School.

9. Mother resides with the two (2) Minor children in a two (2) bedroom apartment. The minor children share one (1) bedroom. Mother's apartment is in the Reading School District.

10. Mother is unemployed.

11. At the time of the parties' separation, they were residing together in New Jersey. Mother returned to Berks County with the younger daughter. The elder daughter remained with father for a period of two and one-half (2 1/2) weeks to enable her to finish her schooling, then reunited with mother. Since that time, mother has had primary custody of the minor children.

12. There is no current custody order. Father and mother have an informal arrangement whereby father can have time with the minor children every weekend. Father travels to Berks County and sees the minor children at the home of the paternal grandparents in Reading, Berks County, Pennsylvania.

13. The paternal grandparents have been very involved with the minor children, caring for them on weekends when father is unable to travel to Berks County for

financial reasons or otherwise, and also keeping the minor children on weekdays when mother is unavailable, particularly during a time when she was employed. Father's grandparents, William and Sondra Renshaw, also provide care for the minor children.

## II. DISCUSSION

Both parties seek primary custody. In making disposition, this court considered the testimony of the parties, paternal grandmother, Pamela Fletcher, maternal grandmother, Maria Cabrera, the in camera testimony of the elder daughter, and the exhibits submitted by the parties.

Father testified that he wants the minor children to reside with him and his wife in New Jersey. He has developed an excellent bond. He can provide a nice home, with play areas nearby. His wife, who works as a teacher's aide, would be available full time to care for the minor children in the summer. The minor children would also then get to reside with their half-brother and stepbrother.

Father testified that when the parties resided together, he assumed the majority of the caretaking duties of the minor children. Mother did the cooking, but he cleaned the dishes, did the laundry, gave the minor children baths, took them to the doctor, and tucked them in. He assisted the elder child in her schooling, helping her to do her homework. In fact, when the elder child asked for help from mother, mother would state: "wait till your father gets home."

Father recognizes that he may have to relocate and states this should not be problem for the minor children.

When the parties resided together, they did move several times, and it never appeared to be a problem for the elder child, who always adapted and was able to make friends and continue to do well in school.

Father alleges that his family actually has more time with the minor children than does mother. According to father, the minor children are at his parents' house or his grandparents' house three (3) weekdays out of five (5) and every weekend. Not only is mother willing to drop them off whenever requested, but seeks assistance, and is sometimes unavailable to pick up the minor children when it is time for them to return to her home.

Father's family handles health care concerns for the minor children. Father or the paternal grandmother take the minor children to the doctor and dental visits. Mother is uninvolved. Further, father claims that mother has been inattentive to the minor children. For example, she allowed a head lice problem to get out of control and remain untreated for several weeks. The minor children have had tooth decay, suffering cavities, with each child being required to have one (1) tooth extracted. On one occasion, the paternal grandmother took one of the children to the hospital to be treated for a throat infection. The paternal grandmother contacted Mother to come to the hospital but she did not respond.

Father also believes that mother is not invested in the minor children's education. According to father, mother does not attend parent-teacher conferences. She has not assisted with the homework. The elder child has had substandard grades as a result. Further, the elder child switched schools from St. Margaret's, a parochial school, to

the city of reading's public school at Riverside Elementary, due to mother's inaction. Father states that mother was required to provide documentation of her income to St. Margaret's by a certain date. She failed to attend to this in a timely manner, resulting in the minor children having to switch schools and start a new curriculum, over father's objection.

Father has other issues with mother's care. He believes that mother shows favoritism to the younger child. He cites one example where mother purchased a nice gift for the younger child for her birthday but had no gift for the elder child on her birthday. Father also objects to mother taking the elder child's cell phone from her as punishment. Father purchased the cell phone for the elder child to be able to communicate with her and to provide her with internet and facebook access. Father states that, "four out of five times," he is unable to contact the child by phone because mother has taken the cell phone from her.

Father is concerned that mother fails to attend to the minor children's daily needs. In addition to the lice and medical examples, father states that mother dresses the minor children in clothing that is too small. He also believes that she does not oversee their bathing, alleging that when they come to the paternal grandmother's house and she gives them a bath, they are so dirty that the bath water is brown and a ring is left in the tub.

Mother disputes father's allegations. She states that the parties reached an agreement when they separated that she would be the primary custodian. There was cooperation until approximately December of 2011 when, after mother rebuffed father's attempts to reconcile, Father became

uncooperative and began refusing to communicate with her. Since that time, there has been a total lack of cooperation. The custody complaint followed soon thereafter.

Mother testified that she, at all times, has properly cared for the minor children. She attends to their daily maintenance. She is active in overseeing their schooling and has attended parent-teacher conferences, including one for this school year. She disputes father's perception that the elder child's grades are substandard, pointing out that for the most part, she has above average grades, particularly in math, although her english and writing skills need improvement. She notes that father is actually the one inattentive, incorrectly believing that math is the area that needed improvement.

Regarding the attendance at doctor and dentist visits, mother agrees that the paternal grandparents have handled these matters, but states that this has taken place because father and the paternal grandparents refuse to communicate with her. They have not provided father's medical information or cards to her. They refuse to advise her about upcoming doctor's appointments or the times the minor children were taken to the hospital for immediate care, stating that the paternal grandmother would contact her after the child had already been treated and left the hospital.

Regarding the lice issue, mother points out that the lice treatments required cooperation which she did not receive from father's family. She states that she did obtain appropriate medications and did contact the doctor. The doctor advised her that the treatment originally prescribed must be carried out before he would prescribe any

alternate treatments, such as oral medication. The paternal grandmother, conversely, had testified that she was told that the medication was not working, was causing one of the children to have a burning sensation, and that oral medication may have to be substituted.

In response to father's allegation that he and his family actually have more custodial time than she does, she states that this is not the case currently, that she has the minor children during the week. She honors her commitment to allow father to have the minor children on weekends but he is often unavailable, having only intermittent contact, so the minor children stay at the paternal grandparents' home. Mother has no problem with the paternal grandparents having liberal interaction and agrees that at the time she was working, they would have the minor children some weekdays. At no time, however, has she been willing to abdicate any responsibility to them or to father.

Mother alleged that father was physically abusive to her over the course of the marriage and even prior to the couple getting married, and was also abusive to the minor children. She spoke about specific incidents in great detail, such as on one occasion while she was pregnant with the elder child and sitting in the car, he assaulted her in front of witnesses. On another occasion, she was choked so extensively that marks from her necklace imprinted on her neck. She testified that he would punch, slap, or choke her as often as once a month, particularly after he returned from deployment. She notes that he was treated for anger management when he was 17 or 18 years old, and was prescribed Wellbutrin. When questioned why she would marry father if he was an abuser, she stated that at the time he began his enlistment and was at boot camp, he told her

that he was a "changed person," that he loved her and that things would be different. She believed him, but he did not change. She told no one about the abuse, being scared to go to the police, and did not want her mother to become involved.

Regarding abuse of the minor children, mother testified that father would scream at them when they misbehaved. He would also employ "military discipline" by requiring them to do such things as run up and down the steps until they were "ready to throw up" or hold their hands out in front of them holding a book, not being permitted to move, while their muscles would burn from the physical stress.

Mother objected to father providing the elder child with her cell phone. She states that at 10 years old, she is too young to have internet and facebook access. The child becomes preoccupied with the cell phone, constantly texting her friends. On at least one occasion, she viewed a web site with mature themes.

Mother does not accept father's statement that his schedule is flexible enough that he will be able to spend extensive time with the minor children. She remembers how inflexible his schedule was when the two were living together. As stated, father has not taken advantage of the parties' arrangement by seeing the minor children every weekend.

At issue is primary physical custody. The paramount concern in a child custody proceeding is the best interests of the child. *Costello v. Costello*, 446 Pa.Super. 371, 375, 666 A.2d 1096, 1098 (1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be premised upon consideration of all factors

which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton*, 442 Pa.Super. 381, 385, 659 A.2d 1040, 1042 (1995).

In 23 Pa.C.S.A. Section 5328, the general assembly has enumerated certain factors to consider when awarding custody, if relevant, giving weighted consideration to those factors which affect the safety of the minor children.

The first factor concerns "which party is more likely to encourage and permit frequent and continuing contact between the child and another party." By all accounts, mother has been very accommodating in permitting contact. The criticism against her is that she actually has been too accommodating, and that she has delegated parenting responsibilities to the paternal grandparents.

At this juncture, father has not been in a position to grant or deny permission on access to the minor children. Certainly, if he has custody of the minor children, there would be logistical problems, as the minor children would reside in New Jersey, with mother being handicapped by transportation issues. On the other hand, it is expected that the maternal grandparents would want to maintain frequent contact, resulting in father bringing the minor children to Berks County for the dual purpose of mother's custodial time and visits with the grandparents.

Mother has established that she recognizes the value of the minor children having frequent interaction with the other side of the family. For a time, she resided with the paternal grandparents when father was deployed and had a good relationship with them until her relationship with father deteriorated. Nevertheless, she has actively

allowed the minor children to continue to enjoy time with grandparents, the great grandparents, and father when he is available. This factor favors mother.

The next factor addresses the "present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child." Mother has accused father of chronic physical abuse, anger issues, and excessive discipline of the minor children. These allegations were recounted in detail and reflected a trustworthy recollection of what took place, not a fabrication. For example, her testimony regarding the "military style" discipline is unlikely to have been created by mother's imagination. For his part, father did not give any explanations, simply categorically denying any abuse. This court finds mother's testimony to be credible.

Given father's denials and the absence of any counseling or other remedies to resolve the issue, there is the concern that father retains the capacity to impose excessive discipline on the minor children. This factor favors mother.

The next factor relates to "the parental duties performed by each party on behalf of the child." This factor is noteworthy. Father has apparently not performed much in the way of parental duties since separation, although he stated when the parties were residing together he shouldered a large majority of these responsibilities. Mother has either delegated or acquiesced in some of the parental duties to the paternal grandparents, particularly health care.

It appears that the burden shifting to the paternal grandparents stems from actions of both sides. The paternal grandparents, who enjoy the company of the minor children immensely, would like as much time with them as possible. No doubt they frequently request this time, and mother accommodates them. This in and of itself does not represent mother attempting to free up time for herself. Nevertheless, when the paternal grandparents assumed control, she acquiesced. While she states she was thwarted from receiving medical appointment or insurance information, she should not have stood by helplessly, but should have made the necessary inquiries and, if necessary, appear in court to regain control of her minor children's health care needs. For their part, the paternal grandparents were perfectly comfortable overseeing these needs, never counseling mother on her need to take these matters over.

The overriding problem here was a breakdown in communication. The lice problem, for example, represents the paternal grandparents and mother acting on parallel courses, creating gaps in treatment and information. A simple discussion, followed by collaboration, would have resolved the lice issue in short order.

There is also the issue of daily maintenance. While it appears that the paternal grandmother's account of the minor children's hygiene might be somewhat exaggerated, it is also likely that mother could do a better job of overseeing this concern. For reasons set forth, this factor favors father, but only moderately, due to his lack of recent involvement.

The next factor concerns "the need for stability and continuity in the [children's] education, family life and

community life." The minor children have experienced a fair amount of transience. The parties, while together, resided at several military bases, including in California and North Carolina. The elder child has had to switch school districts on several occasions. This also occurred post separation when she changed schools from St. Margaret's Catholic School to the Reading School District. While the residential relocations were innocuously based on father being transferred, the change from St. Margaret's to the Reading School District was also caused by the parties' failure to communicate. Father blamed mother for this issue, alleging that she failed to attend to the documentary requirements of St. Margaret's. Mother stated that she was in the process of doing that, requesting father's assistance, when father stated to her: "I'm not giving you any help. The kids can go to public school." This represents another example of father or his family attempting to isolate mother, with mother passively acquiescing.

Neither party has established a stable foundation at this time. Father's marriage is a little over a month old. If you accept mother's version of the facts, father wanted to reconcile with mother as recently as a year ago. Hopefully, the new marriage will be one that endures, but it is simply too early to tell. Regarding mother, there was no mention of any involvement with a paramour, or her plans in this area. She is unemployed, seeking work, but is limited by the fact that she does not own a vehicle. The parties became a couple extremely early in life, with mother becoming pregnant at age 15. They are still young and immature. This court cannot attribute any established level of continuity to the households of either one. Accordingly, this factor will not be considered.

The next factor addresses "the availability of extended family." As stated, the paternal grandparents and great grandparents are integral in the minor children's lives. The maternal grandmother also has a good relationship with the minor children, but has been less involved as a caretaker.

If father obtains primary custody, this would result in the minor children having less contact with the extended family on both sides due to the distances between the residences. Nevertheless, the paternal grandparents' availability to assist mother, as well as father, in the day-to-day caretaking responsibilities has many positive aspects, the major criticism being the lack of communication and the developing mistrust between the sides. Because of the paternal grandparents involvement, this factor must favor father, but only slightly.

The next factor looks at "the child's sibling relationships." The minor children enjoy the company of their infant half-brother and father's wife's son. These relationships should continue to be fostered. This factor favors father.

The next factor addresses "the well-reasoned preference of the child, based on the child's maturity and judgment." The court met with both minor children in camera, but declined to interview the younger child due to her age and maturity level. Regarding the elder child, this court found her to be intelligent, engaging, and able to answer questions directly and truthfully. This court shall issue a separate Addendum, to be reviewed by the court and counsel only, and sealed by the prothonotary, which will discuss the elder child's preference.

The next factor concerns "the attempts of a parent to

turn the child against the other parent." There were no allegations by either party that a parent is attempting to alienate the minor children from the other parent or a member of the parent's family. Accordingly, this factor will not be considered.

The next factor addresses "which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs." Mother has a good bond with the minor children and clearly loves them both. The questions of stability and consistency and to some extent nurturance, turn, in part, on whether mother should be considered a full-time parent or a part-time parent, for clearly some of the minor children's needs in this area are met by the paternal grandparents. Though immature and passive, perhaps even somewhat afraid of challenging the paternal grandparents, mother has, nevertheless, established herself as the key figure in the minor children's lives. As such, there is a moderate level of relational stability.

Father has established consistency. He has been in the Marine Corps for over eight (8) years, achieving promotions. His parents have been a consistent resource for the minor children. On the other hand, he has not been able to establish as strong a bond as mother, predominately because of his lack of contact, but also because he does not appear to have the same capacity to nurture the minor children as does mother. Again, these parties are still developing as parents, their stability being a work in progress. This factor does not favor either party.

The next factor to be discussed relates to "the proximity of the residences of the parties." The distance

between the parties' residences is substantial enough to prohibit frequent transfers of custody, particularly on weekdays during the school year. Father has been limited by financial constraints from taking full advantage of the weekend custodial time agreed to by the parties. This factor will certainly be considered in fashioning a practical schedule.

The next factor concerns "each party's availability to care for the [children] or ability to make appropriate child-care arrangements." As stated, mother has relied on the paternal grandparents, and to a lesser extent her mother, to provide child care. The grandparents remain available and are an acceptable solution. Father has not had the need to seek out daycare arrangements. He testified that his wife would be available in his absence, particularly during the summer months, as she is employed at a school district. If necessary, the paternal grandparents would likely assist him as well, when practical. This court has no concerns about alternate supervision. This factor does not favor either party.

The last applicable factor[1] relates to "the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." Mother appears to be easy going, one who is more likely to avoid rather than seek conflict. She has been very cooperative, allowing father and his family unfettered access to the minor

---

1. Factor number 10, which concerns "which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the [children]," was addressed in the analysis of other pertinent factors. Factor 14, "the history of drug or alcohol abuse of a party or member of a party's household," and factor 15, "the mental and physical condition of a party or member of a party's household," do not apply, as no evidence was presented regarding these matters.

children. This is especially noteworthy considering the physical abuse suffered by mother. Father and his family have been less cooperative, particularly in the area of communication. Whether this results from hard feelings or of lack of trust in mother's ability to parent, it has resulted in the paternal grandparents assuming parental responsibilities. This factor favors mother.

To summarize, the parties are young parents who love their children and who both want to accept the responsibility of being a primary custodian. Both, however, need to show improvement in certain areas to fulfill their capacity as a parent.

Mother has accepted the difficult responsibility of being a single mother of two (2) children. In accepting this responsibility, she has performed some of the duties adequately, but has also chosen to rely on the paternal grandparents for extensive assistance. To some extent, this is appropriate, as they are responsible caregivers. The minor children are given the opportunity to interact with them, always an important concern, but especially so here, because father's contact has been limited. That being said, to the extent mother became dependent upon grandparents to do her job, she shirked her responsibilities. It is important that she be fully involved in the oversight of all legal custody matters.

Father needs to improve on his communication with mother and his level of cooperation. Most importantly, he needs to address through counseling his propensity for domestic violence. He is now a parent of three (3) children and a stepparent of a fourth, all of whom deserve to be treated and disciplined in a humane and responsible

manner.

This court finds that the best interests of the minor children would be served by continuing primary custody with mother. However, father's custodial time shall be expanded during the summer months, such that the parties will share custody equally during that time. This expansion is conditioned upon father seeking counseling, which will be court ordered, and upon there being no further instances of abuse of any party or excessive discipline of any child.

Mother should continue to utilize the paternal grandparents for caretaking purposes. That being said, mother shall, in conjunction with father as shared legal custodian, handle the medical and educational needs of the minor children.

This court enters the following order: