**Marks v. Marks**

C.P. of Berks County, No. 13-16305

*Daniel I. Sager*, attorney for plaintiff.
*John J. Grenko, Esquire*, attorney for defendant.
*Gregory S. Ghen*, guardian ad litem.

LASH, *J.*, Jan. 9, 2015—The matter before this court is the petition of plaintiff, Andrew Marks, (hereinafter "father"), to modify a custody order of this court entered on August 20, 2013. The parties are the natural parents of four (4) minor children. The parties reached an agreement regarding custody of the eldest minor child, by order of August 22, 2014, but continue to dispute custody of the

youngest three (3) children. Trial was held on December 4, and December 16, 2014. The court enters the following findings of fact:

## I. FINDINGS OF FACT

1. Plaintiff, Andrew Marks, (hereinafter "father"), is an adult individual who currently resides at 119 West Fourth Street, East Greenville, Montgomery County, Pennsylvania 18041.

2. Defendant, Jennifer Marks, (hereinafter "mother"), is an adult individual who currently resides at 1396 Huff's Church Road, Barto, Berks County, Pennsylvania 19601, but who intends to relocate to 233 Haas Street, Topton, Berks County, Pennsylvania, sometime in December of 2014. Mother's intention to relocate was initially objected to by father, but the parties then reached an agreement at time of trial permitting mother to relocate.

3. The parties are the natural parents of five (5) children, with four (4) of them being minor children. The minor children include a son, A.M., born January 1, 2000, a son, N.M., born August 22, 2005, a daughter, M.M., born August 1, 2007, and a daughter, H.M., born October 6, 2008, (hereinafter "minor children").

4. The custody order of August 20, 2013, sets forth, among other things, that the parties would share legal custody of the minor children, that mother would have primary custody of the minor children, and that father would have partial custody every other weekend on Saturdays and Sundays, and every Wednesday evening.

The order also provided that the parties would participate in co-parenting counselling through Gateway Counseling Services in Pottstown, Pennsylvania.

5. In his petition to modify, father alleges that it is in the best interests of the minor children to award him primary custody because mother has anger issues, as well as difficulty dealing with father and making appropriate accommodations with father for the minor children, that her relationship with the minor children has deteriorated, that the minor children have a greater bond with father, and that father would be better able to provide a stable and safe environment for them.

6. A revised custody stipulation was agreed to by the parties and entered as an order of court on May 30, 2014, making some modifications to the order of August 20, 2013. One of the provisions addressed father's concern that the maternal grandfather, James Roberts, was exercising corporal punishment on the minor children. The parties agreed that this would no longer take place.

7. In an order entered by agreement on August 22, 2014, the parties resolved custody of the eldest son, A.M., setting forth, among other things, that the parties would share legal custody, that father would have primary physical custody, and that mother would initially have supervised visits on either a Saturday or Sunday from 10:00 a.m. to 7:30 p.m., to occur every other weekend. Commencing October of 2014, she would then assume partial custody from Saturday at 10:00 a.m. to 7:30 p.m. and Sunday

after Sunday School until 7:30 p.m., unless father or the guardian *ad litem* appointed believed that it would not be in the best interest to have unsupervised visits and could then petition the court to have the order modified.

8. On August 29, 2014, a temporary order was entered by agreement, setting forth that the parties would share physical custody of the three (3) youngest children on a 50/50, alternate week basis, with transfers to take place on Sunday at 7:00 p.m.

9. In addition to the subject minor children, father currently resides with his girlfriend, Kristen Heebner, the parties' eldest daughter, Katherine, born April 21, 1992, the eldest minor child, A.M., and Ms. Heebner's daughter, Bridgette. Father and Ms. Heebner have resided together since May of 2014.

10. In addition to the subject minor children, mother resides with the maternal grandfather, James Roberts. When mother relocates to Topton, she will then reside with her boyfriend, Dan Adam, and his three (3) children, D.A., Jr., and two (2) thirteen year old twins, a daughter, A.A., and a son, B.A.

11. Both parties currently reside in the Upper Perkiomen School District. When Mother relocates, she will then be in the Brandywine Heights School District.

12. Gregory S. Ghen, Esquire, was appointed guardian *ad litem* by this Court on January 29, 2014. Attorney Ghen has provided a report and recommendation dated April 14, 2014, a supplemental report dated July 18, 2014, a second

supplemental report dated August 1, 2014, and a third supplemental report, dated December 8, 2014.

13. Father is employed as a truck driver for Agliano Brothers Trucking, working Mondays through Fridays from 4:00 a.m. — 5:00 a.m. to 3:30 p.m. to 4:00 p.m., and sometimes as late as 6:00 p.m. on weeks he does not have the minor children. He also works some Saturdays.

14. Mother is employed at Southern Wine and Spirits of Pennsylvania located in Pottstown, Pennsylvania, working Mondays through Fridays from 9:00 a.m. to 5:15 p.m.

15. The minor son, N.M., has IEPs or modified instruction on all subjects at school. He has also been diagnosed with ADHD. N.M. had received Wraparound Services from Creative Health Services. Currently, there is family based counseling through PA Counseling, which incorporates counseling for all members of the household.

16. The minor daughter, M.M., has an IEP for speech.

17. The eldest minor child, A.M., has been charged with indecent assault-related offenses. The alleged victim is the youngest daughter, H.M. The incident is alleged to have occurred at mother's home. Mother contacted children services, who began an investigation. Currently, A.M. is receiving rehabilitative counseling with Commonwealth Counseling. H.M. is counseling with Dr. Alison Hill. The juvenile delinquency petition is pending.

18. Mother had also commenced counseling for A.M.

with Gary Law at the Penn Foundation. This began in February of 2014. However, mother ended the counseling after becoming involved in a dispute with Mr. Law. According to mother, Mr. Law lied to her.

19. The parties had attempted to engage in co-parenting counseling at one point, but the co-parenting counselor refused to continue, alleging that mother refused to be cooperative and was belligerent.

## II. DISCUSSION

Father seeks primary custody of the subject minor children, while mother requests that the parties continue in a 50/50 arrangement. Because of her relocation, mother has offered to drive the minor children to school, with her boyfriend to pick them up, when she has custody of the minor children.

In making disposition, this court considered the testimony of the parties, father's girlfriend, Kristen Heebner, mother's boyfriend, Dan Adam, the parties' eldest child, Katherine Marks, the maternal grandfather, James C. Roberts, Sr., mother's sister, Linda Bieber, a targeted case manager from Service Access Management, Natasha Reyes, *in camera* conferences with all four (4) minor children, and the exhibits submitted by the parties.

The predominate issue raised by father and the reason he seeks primary custody is his concern about mother's anger and its impact on the minor children. Father reports that mother's anger problem is constant and of longstanding and can include raging behavior. He reports that the minor

children have complained to him and want to spend less time with her because of her disagreeable nature. Father points out that the eldest two (2) children want to have no contact with her. He believes that her corporal punishment is excessive, as she uses wooden spoons, and in one case, she broke the spoon while striking one of the minor children. She was involved in an altercation with Mr. Law and tried to get him removed as A.M.'s therapist. She was angry about the report of the guardian *ad litem* and wanted him removed. She is in denial about her problem, projecting blame for the parties' problems on father and other individuals. According to the minor children, there is also alcohol abuse. With all that being said, it appears that if mother would adequately resolve her anger issues, the parties could work together in a 50/50 custodial arrangement.

Mother disputes father's categorizations. She believes that he and the minor children exaggerate, for what they label as "anger," she considers appropriate discipline. She relates that the minor children will sometimes refuse to acknowledge her admonitions, causing her, after several warnings, to "raise her voice." She admits that she does use corporal punishment, occasionally using a wooden spoon, but that the punishment is reasonable, not excessive. She states that father can "press her buttons" causing her aggravation. Nevertheless, she states that she has set up an evaluation to determine whether she does have an anger problem. Until an expert tells her that she has this problem, she will not concede that this is the case.

She also denies that she is abusing alcohol.

The reports of the guardian *ad litem* provide insight. In his first report, the guardian sets forth certain problems he finds with both parties, calling this a "disturbing case." He states that father downplays or denies the allegations of sexual abuse by A.M. The guardian believes that father thinks that mother has orchestrated these allegations because of the developing enmity between her and A.M. The guardian was also very concerned about father's housekeeping, as the household is extremely cluttered and sloppy, especially important when considering that A.M., who the guardian believes should be residing with father, has an asthmatic condition.

Regarding mother, the guardian finds extensive turmoil in her household, both with A.M. and with the eldest daughter, Katherine. Katherine provided a list of complaints, including her concern that mother makes her do all the housework, mother has an alcohol problem, mother threatens to hit her, mother tried to get her admitted to a mental hospital, mother is threatening A.M. that she will have him declared a juvenile delinquent, mother physically abuses the minor children, striking them with a wooden spoon, and mother's temper is extremely bad and can include raging, particularly if she has been drinking alcohol. The guardian notes that there is an "ongoing mental, emotional and physical abuse by mother."

In his second report, the guardian notes that mother continues to harass A.M. and "target" him for alienation,

also refusing to take A.M. to his scheduled therapy with Mr. Law, causing him to suffer emotionally and mentally. Further, mother attempted to have Mr. Law removed as a therapist. She also attempted to have the guardian removed after she obtained a copy of his initial report. He states that mother allows the other minor son, N.M., 8 years old at the time, to shoot firearms with the maternal grandfather, contrary to father's wishes, and without any professional training. The guardian recommended that father have sole legal custody and primary physical custody, with mother to be restricted to supervised visits.

The second supplemental report discussed the therapy of A.M. with Mr. Law, which father wants to see continue, as he believes that A.M. and Mr. Law have a good relationship, but which mother opposes. From this, the guardian requested that father be granted sole legal custody of A.M.

Finally, in his third supplemental report, the guardian reported on his view of mother's proposed new home in Topton. He found the house to be appropriate. He was satisfied with mother's boyfriend, Mr. Adam, and his children, who were well behaved. He then recommends that father be granted primary physical custody and sole legal custody, with mother to have supervised visits only, until she moves into Mr. Adam's home, and at that time, she would receive partial custody and a 50/50 schedule during the summer months.

The paramount concern in a child custody proceeding

is the best interests of the child. *Costello v. Costello*, 446 Pa. Super. 371, 375, 666 A.2d 1096, 1098 (1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be premised upon consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton*, 442 Pa. Super. 381, 385, 659 A.2d 1040, 1042 (1995).

Section 5328(a) of Pennsylvania's child custody law[1] sets forth certain factors which the court shall consider, if relevant, in determining the best interests of the minor children, giving weighted consideration to any factors which affect the safety of the minor children. The first factor addresses "which party is more likely to encourage and permit frequent and continuing contact between the [minor children] and another party." While mother has been denied access to A.M., this problem was not orchestrated by father, but is primarily due to the estrangement between mother and A.M. and is pursuant to recommendations of the guardian *ad litem*. Otherwise, both parties appear to recognize that the other parent should have access to the minor children, despite their differences. This factor does not favor either party.

The next factor concerns the "present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the [minor children] or an abused party and which party can better

---

1. 23 Pa. C.S.A. Section 5328(a).

provide adequate physical safeguards and supervision of the [minor children]." Father claims that mother's corporal punishment has been abusive. She yells and screams at the minor children. She strikes them with a wooden spoon and has broken one over a child's behind. On one occasion, she chased one of the minor children with the wooden spoon. The anger and screaming also impacts on the minor children emotionally and psychologically.

Mother claims that father has been abusive to her in the past. She states that he has pushed and shoved her around and was verbally abusive. She claims that he put a choke hold on her approximately nine (9) years ago.

There is also the issue of the juvenile charges against A.M. for his alleged indecent assault of H.M. pending disposition of the juvenile charges, A.M. and H.M. are in counseling.

As will be discussed more fully later in this opinion, mother has a serious problem with managing her anger. Accordingly, it is extremely likely that she acts out of anger when the minor children misbehave, rather than administering the discipline dispassionately. This court finds father's version of mother's corporal punishment to be credible. The complaint against father is remote in time. Father does not presently pose a safety problem for mother or any of the minor children.

The problem between A.M. and H.M. will be addressed through the juvenile court proceedings, with safeguards provided in the order for this case. This factor favors

father.

The next factor relates to "the parental duties performed by each party on behalf of the [minor children]." Mother testified that she has been the parent who has performed the lion's share of the day-to-day maintenance for the minor children. When the parties resided together, father was often unavailable due to his employment commitments. Mother would handle feeding, clothing, and oversight of the minor children. She would attend to their educational and medical concerns. After separation, mother continued to perform these functions.

Father complains, however, that mother would often assume control of appointments, not giving father the opportunity to participate. Nevertheless, father has become active with the educational and medical concerns and is involved with the minor children's maintenance when they are residing with him. At this juncture, both parties adequately address these minor children's needs and, therefore, this factor does not favor either party.

The next factor addresses "the need for stability and continuity in the [minor children's] education, family life and community life." Mother's circumstances are less stable, as she is involved in moving from the maternal grandfather's home to the home of her boyfriend. Mother will now be residing in a different school district and will be residing farther away from father's residence. That being said, the guardian *ad litem* was satisfied with mother's new residence in Topton. There does not

appear to be any significant environmental problems. As mother is only seeking shared physical custody, the minor children will continue to attend the same school district regardless of this court's decision. Father has provided a stable household in the same school district and pledges to continue to do so. This factor favors father but only slightly.

The next factor concerns "the availability of extended family." Both sides have family members who interact with the minor children. That being said, there are issues with mother's side of the family. She is estranged from the maternal grandmother. The maternal grandfather has caused concerns for Father and this court. He was involved in an altercation with A.M., which was inappropriate. He apparently sees no problem with taking N.M. out to practice shooting, despite father's objections, and the fact that N.M. has not had proper safety training. This factor favors father.

The next factor addresses "the [minor children's] sibling relationships." The minor children get along with father's girlfriend's daughter, Kristen, who watches them periodically, and also gets along with mother's boyfriend's two (2) children. The only concern here relates to the allegation against A.M. regarding his illicit involvement with H.M. This factor does not favor either party.

The next factor concerns "the well-reasoned preference of the [minor children], based on the [minor children's] maturity and judgment." This court conducted an *in*

*camera* interview with each of the four (4) minor children separately, with the attorneys present. This court will publish a separate addendum to this opinion, setting forth the minor children's statements to the court. This addendum is to be sealed from view of the parties and the general public.

The next factor addresses the "the attempts of a parent to turn the [minor children] against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the [minor children] from harm." As stated, mother is estranged from A.M. and the parties' eldest daughter, Katherine. Mother asserts that this estrangement is due, at least in part, from father's orchestrations. Father counters that the issues raised by mother regarding A.M.'s contact with H.M. may have resulted from mother's agenda to separate father and A.M. from the rest of the family. In fact, the parties and the minor children's hard feelings are not the result of attempts at alienations by either party but results from mother's continuing anger problem and Father's response thereto. This factor does not favor either party.

The next factor addresses "which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the [minor children] adequate for the [minor children's] emotional needs." There is no doubt that father is much better equipped to foster the minor children's positive emotional development. He has the capacity to nurture. All of the minor children love him and appear to respect him. Mother, conversely, appears

more interested in feeding her desire to be mad at the world. She does not appear to consider the consequences resulting from her outbursts and her undercurrent of anger. The emotional climate in mother's household cannot be healthy for these minor children. This factor favors father.

The next factor questions "which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the [minor children]." Both have shown that they are capable of doing this. Mother has, as she stated, been very actively involved in the maintenance, education, and medical needs of the minor children. Father has become involved since the parties' separation. He has been very active in the educational areas and is able to converse regarding the minor children's progress in school and his discussions with the teachers. This factor favors mother, but only slightly.

The next factor addresses "the proximity of the residences of the parties." As stated, mother has moved farther away from father's residence, which has increased the travel time between households. Father initially objected to this, but since mother is not seeking primary custody and since the greater distance is not substantial, the relocation has not adversely impacted on the parties or the minor children. This factor does not favor either party.

The next factor addresses "each party's availability to care for the [minor children] or ability to make appropriate child-care arrangements." This has not been

a concern. When the minor children are at father's house, if he is unavailable, the parties' eldest daughter or father's girlfriend's daughter is available to care for them. Father's girlfriend is also available at certain times. In mother's household, mother's boyfriend can assist. This factor does not favor either party.

The next factor relates to "the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. The conflict continues to be high. Mother's anger issue is the primary concern. Mother presents herself as an unhappy woman, with a constant undercurrent of anger, which comes to the surface anytime something seems to bother her, which is often. This court has observed mother's anger problems on several occasions. At a previous hearing, mother was barely able to control herself, requiring stern admonition from this court. At trial, she was much more subdued, probably after receiving strong warnings from her legal counsel, but nevertheless the anger issue did manifest itself on occasion, in the form of disdain or arrogance, particularly during times of cross examinations. Because of this anger, she has no relationship with two of her children or her mother, and has been at odds with the guardian *ad litem* and Mr. Law. Her minor children are under stress when with her and in varying degrees want to spend less time with her and more with father. Although her anger is obvious to anyone whom observes her, she does not appear to recognize the nature or extent of the problem, insisting on waiting for the results of an evaluation before

she will conclude that there is something that needs to be addressed.

Because of Mother's anger problem, this case, which could be handled very simply and by agreement, becomes difficult. The anger is a simple waste of time and energy, with no redeeming value. Instead of trying to draw her minor children and others closer to her, as people generally do, mother appears to prefer pushing them away. The tension in the atmosphere when she is present is palpable and clearly is harmful to the minor children. If Mother could simply learn to accept her responsibility, recognize what she is doing to herself and the minor children, also recognizing the lack of value in her attitude, then change her ways, the minor children would benefit, and would want to spend much more time with her. Setting aside the anger issue, Mother has the capacity to be an excellent mother. She loves the minor children and is very attentive to their daily needs. Father appears to think that a 50/50 arrangement would make sense if mother would simply get past the anger. Mother has not currently shown any capacity to do this and, therefore, this factor strongly favors father.

The next factor addresses "the history of drug or alcohol abuse of a party or member of a party's household." There was no allegation of drug abuse. There is an allegation, primarily from the minor children, that Mother has issues with alcohol. Mother admits that she enjoys a drink at the end of the day, particularly after the minor children have gone to bed. She sees no problem with this. Because

of medications she is on, she has to limit her intake to a measured out portion.

Whether Mother has an issue with alcohol or whether her use of alcohol affects her problems with anger was not established. In fact, there was no reference to any incidents that did or could have caused harm to the minor children and were directly related to Mother's use of alcohol. While this court has some concerns about Mother's commitment to alcohol, at this juncture, this factor does not favor either party.

The last factor concerns "the mental and physical condition of a party or member of a party's household." Neither party has any physical conditions that would hamper their ability to care for the minor children. Mother's anger problem may be related to a mental pathology and, if so, certainly affects her custodial status, for reasons already set forth. Since her anger issue has been addressed previously, however, this court will not weigh this factor against her.

For all the reasons set forth, this court awards primary physical custody to Father. That being said, if mother would recognize her anger problem and address it satisfactorily, the 50/50 arrangement would then become more appropriate, and this court would entertain a modification on informal motion. In essence, this decision is based on a prevalent problem which must be addressed. Either the anger problem is removed through Mother's own actions or is circumvented through limitations on her

time with the minor children. A big part of the issue is her denial, refusing to accept what is obvious to everyone else who is around her. If she does become introspective and recognize what she is doing to herself and the minor children and makes the necessary changes, the minor children's capacity to thrive would be greatly improved.

This court enters the following order:

## ORDER

And now, this 9th day of January 2015, after trial held, custody of the parties' minor children, N.M., born August 22, 2005, M.M., born August 1, 2007, and H.M., born October 6, 2008, (hereinafter "minor children"), shall be as follows:

1. The parties shall share legal custody of the minor children.

2. Plaintiff, Andrew Marks, (hereinafter "father"), shall have primary custody of the minor children.

3. Defendant, Jennifer Marks, (hereinafter "mother"), shall have partial custody every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m.

4. The parties shall alternate the following holidays: Labor Day, Thanksgiving, Easter, Memorial Day, and Fourth of July from 10:00 a.m. to 7:30 p.m.

5. The parties shall share Christmas as agreed. However, it is understood that mother shall have each and every Christmas morning with the minor children. Father shall

be entitled to have Christmas Eve with the minor children until 8:00 p.m.

6. Mother shall have Mother's Day and father shall have Father's Day each year from 10:00 a.m. to 7:30 p.m.

7. Both parties shall be entitled to one (1) week of vacation with the minor children. They do not need to take a full week if they do not so desire. However, they shall not take any vacation during the other parent's weekend. The parties shall provide each other with contact information, including the address and telephone number of any hotel where they may be staying while on vacation.

8. The holiday and vacation schedules shall take precedence over the regular custody schedule.

9. The minor children, once they are 12 years of age or older, shall be permitted by either parent, with adult supervision, to operate riding lawn mowers, without cutting deck engaged, and sports utility vehicles, provided they are not on the road. While neither party shall permit the minor children to drive any other motorized vehicle, tractor, truck, or farm equipment, until said minor child reaches the age of 16, the minor children shall be permitted by either party, with adult supervision, to operate and ride four-wheeler/ATVs, provided they wear helmets.

10. Due to allergy and asthma concerns with the minor children, neither party shall allow the minor children to unload hay and straw wagons.

11. The paternal grandfather should not be permitted

74

to provide any child with access to firearms or permit the minor children to shoot firearms, without the express consent of both parents, and without prior proper training for firearms.

12. Neither mother nor father shall use corporal punishment of any kind to discipline the minor children, nor shall they allow any other adult in their household or in whose care they entrust the minor children to use corporal punishment to discipline the minor children. The parties shall be solely responsible for disciplinary decisions involving the minor children while in their care or respective households and that while other members of the household may assist in following through and enforcing a disciplinary decision made by mother or father, other members of the household may not impose a disciplinary decision or punishment on the minor children.

13. The parties' minor child, A.M.'s, contact with the minor child, H.M., shall be supervised by an adult, and shall be in accordance with any order of juvenile court, pending disposition of pending juvenile court proceedings. The appropriateness of unsupervised contact between these minor children shall ultimately be decided by juvenile court.

14. Mother shall engage in therapy to address her problems with anger management, continuing in these sessions until the therapist believes these sessions are no longer necessary or until further order of court. Mother shall pay the costs for these sessions.

15. The parties shall share the transportation for all periods of physical custody as they agree. If the parties cannot agree, each party shall pick up the minor children from the home of the other party.

16. This order shall be considered a final order finally resolving the issues raised in the petition of plaintiff, Andrew Marks, to modify a custody order of this court entered on August 20, 2013.

17. If either party is planning to relocate with the minor children and the relocation will significantly impair any other party's exercise of custodial rights, the relocating party is obligated to provide a detailed notice and counter-affidavit by certified mail, return receipt requested, to all individuals who have custody rights to the minor children at least sixty (60) days in advance of the proposed relocation in compliance with 23 Pa. C.S.A. Section 5337.

18. The final custody order entered by this court on August 22, 2014 shall remain in full force and effect.

19. The attached appendix shall be made a part of the within order.

## APPENDIX TO CUSTODY ORDER

Certain rules of conduct which generally apply to custody matters are set forth below and are binding on all parties. Violation of any of these rules could become the subject of contempt proceedings before this court, or could be grounds for modification of this order. The word "child" is used below, but these rules apply to all the

children in the order. If any of these general rules conflict with any specific provisions of the order, the order shall control.

1. In addition to the rights in the order, all parties shall also have the following rights with respect to the child:

A. The right to reasonable telephone contact with the child when they are in the other party's custody.

B. The right to be fully informed concerning the progress of the child in school and the child's medical status, including the right to obtain information directly from the child's school or medical practitioner.

C. The right to be informed in advance before any important decision is made concerning the child and the opportunity to participate in those decisions.

2. In the event of any serious illness of the child at any time, the party then having custody of the child shall immediately communicate with the other parties by telephone or by any other means, informing the other parties as to the nature of such illness. During such illness, each party shall have the right to visit the child as he or she desires consistent with the proper medical care of the child.

3. None of the parties shall alienate or permit an attempt by anyone else to alienate the child from the other parties. While in the presence of the child, none of the parties shall make any remarks or do anything which is derogatory or uncomplimentary to the other parties and it shall be the

duty of each party to uphold the other parties as ones the child should respect and love.

4. Both parties shall provide each other with the addresses and telephone numbers of where they will be staying anytime they take a trip with the child out of the jurisdiction of Berks County in excess of three (3) days.

5. The parties shall not conduct arguments or heated conversation in the presence of the child or when the child can overhear the argument.

6. The parties shall at all times consider the child's best interests, and act accordingly. It is in a child's best interest for the parties to understand that the child is trying desperately to cope with the fact of his or her parents' separation, and needs help in loving both parents and any other involved parties.

7. Neither party shall question the child as to the personal life of any other party except insofar as necessary to insure the personal safety of the child. By this we mean that the child will not be used as a spy on any other party. It is harmful to a child to be put in the role of spy.

8. The parties should remember that they cannot teach the child proper moral conduct if that party is indulging in improper conduct. Children are quick to recognize hypocrisy, and the party who maintains a double standard will lose the respect of the child.

9. Weekend and evening custody shall be subject to the following general rules:

A. Arrangements should be worked out beforehand between the parties without forcing the child to make choices and run the risk of displeasure. However, the child shall be consulted as to their schedules when appropriate.

B. Custodial rights shall be exercised at reasonable hours and under circumstances reasonably acceptable to the other parties and to the needs and desires of the child.

C. If a party finds himself or herself unable to pick up or drop off the child at the designated or agreed to time, he or she should give immediate notice to the other parties to avoid subjecting the child to unnecessary worry or failed expectations.

D. The party having custody of the child should prepare them both physically and mentally for the transfer of custody to another party and should have them available at the time and place designated in the order or mutually agreed upon.

E. If any party or the child has plans which conflict with their scheduled custodial time and they wish to change their custodial time, the parties should make arrangements for an adjustment acceptable to the schedules of everyone involved. Predetermined schedules are not written in stone, and the parties should be flexible for the sake of the child.

F. If a party shows up to begin their custodial time with

the child and the party is under the influence of alcohol or drugs, the custodial time may be considered forfeited on those grounds alone.

10. If any party feels that another party has violated this order, they may petition the court as set forth in Pa.R.C.P. 1915.12.